## Charles Hull vs. Seeley Harris.

Pending a proceeding for contempt in disobeying an injunction against the diversion of water from a spring, the plaintiff and defendant entered into an agreement by which the proceeding was to be continued to a future day, and the defendant was to use all practicable means to restore the stream, to pay the plaintiff his expenses in the suit, and also to pay him such damages as they should agree on, or, if they could not agree, as should be fixed by a referee, and after their payment to give the plaintiff a bond with surety that his right to the water should not be disturbed; and when this was done the proceeding was to be withdrawn. The defendant restored the stream so far as it could be done and paid the expenses of the suit, but did not pay the damages nor give the bond. It appeared however that, for the purpose of settling the damages, he had called on the plaintiff for a statement of his claim with regard to them, which the latter refused to give. Held that the defendant was not liable to a judgment for contempt.

Motion for an attachment for a contempt, filed in the Superior Court, and heard before *Sanford, J.* Judgment that the defendant was guilty of contempt. Motion in error by defendant. The case is sufficiently stated in the opinion.

*W. F. Taylor* and *H. S. Sanford*, with whom was *W. K. Seeley*, for plaintiff.

*L. D. Brewster* and *S. Tweedy*, for defendant.

Pardee, J. In 1872 Hull, by virtue of a right vested in him, was conveying water from certain springs and reservoirs situated upon the land of Harris, by pipes, and selling it to various persons in Danbury, gaining profit thereby. Harris, having threatened to interrupt the flow of water through the pipes, the Superior Court for Fairfield County, at the August term, 1872, enjoined him against carrying his threat into execution; disregarding this, on the 10th day of November, 1874, he dug trenches near the springs in such manner as partially to divert the water from the pipes and thereby caused loss and damage to Hull; thereupon he was cited to appear before the court on the 18th day of the same month to show cause why he should not be punished for contempt. Upon the next day the parties made a written agreement as follows:

"1st. The suit now pending in the Superior Court and which has been partially heard, shall be continued until such a day in December, 1874, as may be fixed by Judge Martin.

"2d. That said Harris shall at once attempt and use all possible means for the return of the flow of water into the springs, reservoir and pipes of said Hull, in as full and ample manner as before the injury, at his own expense, and that the same shall be permanently so fixed.

"3d. That said Harris shall pay to said Hull all his expenses in conducting said suit, including lawyers' fees.

"4th. If said Hull and Harris cannot agree upon the amount of damages to be paid to said Hull, then Judge Martin is to fix the amount.

"5th. Said Harris agrees that said Hull may at all times go upon his land for the purpose of repairing pipes, excavating, &c., without being confined to any particular route, doing as little damage as possible.

"6th. Should the above agreements be performed and the amount of damages agreed upon be paid, then, upon giving a bond by said Harris with sufficient surety, binding his and their heirs and assigns to said Hull, his heirs and assigns, that his rights in and to said springs of water, reservoirs and pipes, and the free and uninterrupted flow of the water into and through the same, and his passage over said land when necessary for the purpose of repairs or to remove obstacles, shall never be molested, said suit now pending shall be discontinued; this being a mere memorandum agreement subject to such alterations and changes as may be necessary to carry the intention of the parties into full effect."

Within a reasonable time after the execution of this agreement Harris attempted fairly, honestly, and in perfect good faith, to restore the water to the springs, reservoirs and pipes. In January, 1875, he paid to Hull $223.69, being the amount of his expenses in prosecuting the motion for contempt, including lawyers' fees. He then demanded from Hull a statement of his claim for damages from the loss of water by the diversion, which statement Hull has at all times refused to give or make. Harris has never executed, and Hull has

never required or requested the execution of, the bond named in the fifth article.

The Superior Court at the February term, 1877, adjudged and decreed that Harris was guilty of contempt in violating the injunction, and that he should pay a fine of ten dollars to the state of Connecticut and the costs of the application to Hull, and in default of payment of either should stand committed until he complied.

He thereupon filed a motion in error, specifying several errors, one only of which it is necessary to state, namely: "In deciding that the agreement entered into by the parties by the consent of the court and carried out by the respondent and the petitioner, was not in full purgation of the contempt, if committed; and in not holding that the petitioner is clearly in fault for its not being carried out in full."

This exception is well taken. Harris, being in court upon a citation to show cause why he should not be punished for contempt, Hull could have insisted upon subjecting him to the full rigor of the law; but thinking, doubtless, that he could secure a more complete restoration of the privileges of which he had been deprived and a more satisfactory compensation for the injury resulting from the temporary deprivation, chose, with the consent of the court, to take his cause from the forum of law and make it a matter of private negotiation and contract between himself and his opponent. Accordingly he stipulated that if Harris would do certain acts he would no further press the suit against him. Having made a contract he is bound to-performance on his part. He required Harris to pay the damages resulting from the diversion of water; providing also that if they could not agree the amount should be determined by a referee. The damages from the nature of the case could be known only to Hull; the legal import of his contract is that he shall state them to Harris—that he shall make it possible for him to pay.. He has bound himself not to go into court until he has given Harris an opportunity to agree with him; and agreement as to unliquidated damages is impossible so long as the claimant refuses to open his mouth. He has contracted to give Harris an opportunity

both to agree and to pay before he will subject him to the expense either of a referee or of further proceedings in court; his refusal to state prevents payment; by stating, he can at any moment be paid or put Harris in the wrong. Having taken himself out of court by contract he cannot be heard there again until he can show such performance on his part as entitles him to that privilege. In this state of things the failure of Harris to give security for future good behavior is unimportant; this would be but an idle labor so long as Hull bars the way to a complete performance by Harris of all the requirements of the agreement; presumably, if he can be allowed to pay, he will complete his defence by filing the bond.

There is error in the judgment complained of.

In this opinion the other judges concurred.