Baldwin v. Miles.

NATHAN A. BALDWIN AND OTHERS *vs.* GEORGE W. MILES
AND OTHERS.

New Haven & Fairfield Cos., Jan. T., 1890. ANDREWS, C. J., CARPEN-
TER, LOOMIS, TORRANCE and FENN, JS.

A judgment of the Superior Court in a case of civil contempt can be re-
viewed by this court on error.

Injunctions should be clear and certain in their terms, so that the parties
upon whom they are served may readily know what they can or can-
not do under them.

A judgment that the defendants were guilty of a contempt in violating an
injunction, reversed on the ground that the acts of the defendants, as
found, did not come within the prohibition of the injunction as con-
strued by this court; and that, if the construction given was not the
correct one, the terms of the injunction were too vague and indefinite
to be the foundation of proceedings in contempt.

[Argued January 21st—decided March 31st, 1890.]

COMPLAINT for the violation of an injunction; brought
to the Superior Court in New Haven County, and heard
before *F. B. Hall, J.* Facts found and defendants adjudged
guilty of contempt. Appeal by the defendants. The case
is fully stated in the opinion.

*D. Davenport* and *S. Judson, Jr.*, for the appellants.

*W. T. Bennett*, with whom was *T. E. Doolittle*, for the
appellees.

TORRANCE, J. On the 14th of May, 1886, an injunction
against the continuance of a nuisance was issued by the
Superior Court against the present defendants, at the instance
of the plaintiffs and others, and the case at bar is a proceed-
ing in the form of a complaint alleging a violation of the
injunction and asking that the defendants be attached and
committed to jail as for a contempt in such violation.

In obedience to the order to show cause issued in the case
the defendants severally answered denying the breach, and

after a hearing had the court below found them each guilty of contempt, and ordered them to pay a fine of one hundred dollars each, and the costs of the proceeding, and to stand committed until the judgment should be complied with. The defendants have appealed to this court for divers claimed errors in the rulings of the trial court upon questions of evidence and also for holding upon the facts found that the defendants had violated the injunction.

Before considering the questions presented by the defendants' appeal, it will be well to dispose of the claim made by the plaintiffs on the argument before this court, to the effect that the judgment of the Superior Court in a case of contempt cannot be reviewed by this court, unless there is in the case as presented here a question as to the jurisdiction of the Superior Court.

There are unquestionably scattered through the text books and reports many statements and dicta which apparently or in fact support such a claim; but we think it will be found on a close examination that the authoritative decisions of courts of last resort sustaining such a claim as broadly as it is here made, are very few.

And whatever views may prevail elsewhere, we think the law of our own state, at least so far as cases like the one at bar for a civil contempt are concerned, must be regarded as settled adversely to the plaintiffs' claim.

In the case of *Rogers Manufacturing Company* v. *Rogers*, 38 Conn., 121, upon a reservation, and in *Hull* v. *Harris*, 45 Conn., 544, upon a motion in error, both of them cases of contempt for violating an injunction, and in the more recent case of *Welch* v. *Barber*, 52 Conn., 147, a case of contempt brought here by appeal, this court considered and decided questions other than questions of jurisdiction.

In *Catlin* v. *Baldwin*, 47 Conn., 173, which was a case of contempt for violating an injunction, this court said:—" Our system of administrative justice as a rule delays the enforcement of judgments of courts of original jurisdiction until they have been affirmed by this court, if the parties to be affected exercise their right to bring their cause here."

There may be some exceptions to this rule, as is pointed out in that case, but the case at bar does not come within the exceptions.

On principle also we think such a view of the law is the correct view.

The case at bar is a case of civil contempt as defined in *Welch* v. *Barber*, above cited. In such cases, as the offense is not committed in the presence of the court, the judge can have no knowledge of the facts which constitute the offense, except as they are communicated to him by others. As is said in that case —" He could not of his own motion and upon facts within his own knowledge render judgment against the delinquent. As the facts must be established by proof a trial is necessary."

If a trial be necessary it follows that it must be conducted according to the law of the land and in such a manner as to deprive none of the litigants of their legal rights in the trial of their cause. If by the action of the trial court in the conduct of such trial a party is deprived of any of his legal rights in the presentation of his cause or of his defense, we know of no good reason why, if he desires it, the errors of law arising on such trial which have resulted to his harm ought not to be reviewed by this court on appeal or other appropriate proceedings in error.

We come now to the reasons of appeal filed in the case, and inasmuch as the view we take of the sixth reason of appeal disposes of the case, we pass the other reasons without further consideration.

The sixth reason of appeal is to the effect that the court below erred in its construction of the language and effect of the judgment or order of injunction.

The defendants contend that the order regulated only the business of making phosphate manures at their establishment, and not the business of extracting fish oil and making fish pumice, and that the court below ruled against this claim and in so doing erred.

To determine whether the defendants are right in this claim we must look at the language of the injunction—both

of the order itself and of the finding of facts on which it was based, and also at the finding and judgment of the court below. The finding on which the injunction is based and which forms a part of the injunction is to the following effect: that the defendants from August 24th, 1885, to the date of that suit had been carrying on at Welch's Point in Milford the business of extracting fish oil and making fish pumice, and also the business of making phosphate manures; that in carrying on this business they had collected and stored large quantities of partially dried fish scrap, phosphate rock, dried fish, fresh phosphate, and sulphuric acid mixed with coal tar; that with such materials the business was so carried on as at times to produce nauseous and sickening stenches, which were diffused through the air, and large quantities of acrid tarry substances of filthy and disgusting smell were produced which were deposited along the shores of the sound, creating a nuisance to the then plaintiffs and a large part of the people of Milford; that these stenches arose from and during the mixing of said acid and other materials to make phosphate manures, and on warm days when the wind blew from the southward towards the land, were a nuisance to the then plaintiffs and other people living within a radius of two miles of Welch's Point; that on cold days, or when the wind blew from the land towards the water, the smells were not a nuisance to the then plaintiffs or the public, and that prior to the time when phosphate manures began to be manufactured at said establishment the business of extracting fish oil and making fish pumice there, though producing disagreeable smells, occasioned no nuisance public or private. After finding these, and other facts which are omitted because they have no bearing upon the present discussion, the language of the injunction or order is as follows:

"It is ordered and adjudged that the manner of conducting said business at Welch's Point by said John Guyer and his agents and assigns, and by the George A. Miles Company's agents and assigns, shall hereafter be regulated as follows:

"1. Between the first day of July and the fifteenth day of September in any year no materials shall be mixed with sulphuric or other acids or chemicals, for making any phosphates, phosphate fertilizers or phosphate manures, except as by law provided, nor so as to constitute a nuisance to the plaintiffs or the public; nor shall said business be so carried on at said establishment as to produce any noxious or offensive odors or stenches constituting a nuisance, at any time when the wind is from any point of the compass from east around southerly to west, or so as to be at any other time a nuisance to the plaintiffs or the public.

" 2. No tar or acid shall at any time be placed in or allowed to drain into the sound or harbor, or placed on or allowed to drain on the shores, except for the purpose of being forthwith removed, or deodorized and rendered inoffensive by mixing with other suitable materials."

In the case at bar the court below finds that the defendants have not mixed any materials with acids or chemicals for making phosphate manures, and that they have not violated the injunction in that regard at all. And it further finds that the defendants have not violated the provisions of the second paragraph of the injunction order above quoted.

What then does the court find they have done to violate the injunction? It finds " that the defendants have continued, during the period between the first day of July, 1889, and the date of said application, to carry on said business so as to produce noxious and offensive odors and stenches constituting a nuisance, at times when the wind was from east around southerly to west."

Now as the court has found that the defendants did not carry on the phosphate manure business at all so as to constitute a nuisance or a violation of the injunction, it follows that the business which the court finds the defendants did carry on between July first and the date of the application so as to be a nuisance, must have been some business other than the phosphate manure business. If then the business which the injunction order restrained the defendants from carrying on was the phosphate manure business, then in car-

rying on some other business the defendants, whatever else they may have done, have not violated the injunction.

The part of the injunction order which the court finds that the defendants violated is that part of paragraph one, above quoted, which reads as follows:—" Nor shall said business be so carried on at said establishment as to produce any noxious or offensive odors or stenches constituting a nuisance, when the wind is from any point of the compass from east around southerly to west, or so as to be at any other time a nuisance."

The question then arises—what business is meant or referred to by the phrase "said business" in the passage last above quoted. If it mean the phosphate manure business alone, then the decision of the court below was wrong, for it finds that they did not carry that on. If it means the fish oil and pumice business, or both that and the phosphate manure business, then, if this meaning is clearly and explicitly stated, the decision of the court below is right.

To ascertain the meaning of any part of the injunction, the entire injunction should be taken into account. Now the finding of facts on which the injunction order is based recites that the odors and stenches which the court declared to be a nuisance arose only from the making of phosphate manures; that the acrid tarry substances of filthy and disgusting smell came from this business and not the other; that it was from this business alone that the odors and stenches arose which on warm days and when the wind was in a given direction occasioned a nuisance to all who lived within a radius of two miles of Welch's Point; and that though the fish oil and pumice business caused disagreeable smells at times, yet it occasioned no nuisance public or private. Naturally therefore we should expect that the court would undertake to regulate the business which caused the nuisance and not the business which occasioned none. And this expectation is met by the language of the first part of paragraph one, hereinbefore quoted, which in terms deals with the phosphate manure business alone. It then proceeds "nor shall said business be so carried on" etc. as before

quoted. What business, unless it be the business spoken of in the sentence preceding, to wit, the phosphate manure business? We think that this is the only meaning that can fairly be given to it. The defendants are first told that between certain dates they shall not make phosphate manures at all, except as provided by law, and the court finds that they did not. Then they are told that at other times, when the wind is in a given direction, or at any other time in fact, they shall not carry it on so as to constitute a nuisance, and the court finds that they did not. To construe it otherwise is to do violence to the language and intent of the order.

For these reasons we think the injunction order was meant to, and that it does in fact, regulate the phosphate manure business and nothing else; and that upon the finding of the court below judgment should have been rendered for the defendants. If however we are wrong in this conclusion, then we think the language of the injunction is too vague and indefinite to be the foundation of proceedings in contempt.

Such an order should be clear and certain in its terms, so that the party upon whom it is served may readily know what he can or cannot do thereunder, seeing that the consequences of a breach may subject him to loss of property and imprisonment. As this court said in the case of *Rogers Manufacturing Company* v. *Rogers*, 38 Conn., 125—" Injunctions ought to be made plain and distinct. No respondent is to be entrapped into a contempt by vague or general orders."

For these reasons we think the court below erred in rendering judgment against the defendants, and the judgment is reversed.

In this opinion the other judges concurred.