CLARENCE DEMING ET ALS. *vs.* THOMAS D. BRAD-
STREET, COMPTROLLER, AND COSTELLO LIPPITT,
TREASURER.

First Judicial District, Hartford, May Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK AND WHEELER, JS.

The State Senate passed a resolution, known as rule 27, under which
the president *pro tempore* was instructed to designate eleven re-
porters of Connecticut newspapers to report the proceedings of
the Senate, and the comptroller was instructed to draw an order
in favor of each of them for $300, and the treasurer to pay the
orders, upon the certificate of the president *pro tempore* that the
designated reporters had been in continuous attendance during
the session. Certain taxpayers brought an action to .the Superior
Court against the comptroller and treasurer, alleging that such
payments would be illegal gratuities, and claiming an injunction
against the drawing or paying any orders upon the certificate of
the president *pro tempore* as set forth in rule 27. The court granted
an order of temporary injunction commanding the comptroller
not to draw an order to any of the designated reporters who should
claim such order under authority of rule 27, and commanding
the treasurer not to make any payment claimed by authority of
rule 27. Thereafter the Senate repealed rule 27, and passed a
resolution directing the treasurer to pay to each of the same eleven
reporters $300 "for special services." The comptroller on the
same day registered this resolution under General Statutes, § 89,
and the treasurer made the payments. . Previous to the passage
of the latter resolutions the comptroller had asked the opinion of the
Attorney-General, and had been advised by him that the repeal
of rule 27 would vacate the temporary injunction. The method
by which these reporters were paid was unusual, and the defendants
knew, or should have known, that to pay the reporters under the
Senate order would defeat the object of the taxpayers' action; but
they relied on the advice of the Attorney-General, and had no
intention of violating the temporary injunction. On an application
for punishment of the defendants for contempt of court, the Supe-
rior Court held that the defendants had not violated the injunction,
and dismissed the application. *Held*, on an appeal to this court,
that the Superior Court did not err in so doing; that the question
was not so much what motive actuated the defendants, as what
acts were forbidden by the injunction.

An order of injunction must be framed in such terms that, when fairly
interpreted, it clearly indicates to the persons enjoined what acts
they are restrained from doing.

Deming v. Bradstreet.

A temporary injunction is a preliminary order of court, granted at the
outset, or during the pendency, of an action, forbidding the per-
formance of the threatened acts described in the original complaint,
until the rights of the parties respecting them shall have been
finally determined by the court. It was the duty of the defendants
to read the temporary injunction in the light of the purpose of the
original suit, as shown by the averments of the complaint and by
the demand for relief. But it was not their duty to determine
what order was required to be made in that action to properly
protect the rights of the parties. That was a question for the judge
granting the order of injunction.

Since the complaint, the demand for relief, and the injunction order in
this case, were based wholly on the illegality of payments pro-
posed to be made under rule 27, and contained no averment that
the Senate could not in any manner legally provide for the pay-
ment of the reporters, the action of the defendants in making the
payments under the direct grant of the Senate was not a violation
of the injunction order.

Argued May 15th—decided July 26th, 1912.

APPLICATION for the punishment of the defendants
for alleged contempt in violation of a temporary order
of injunction, brought to and tried by the Superior
Court in Hartford County, *Greene, J.;* facts found and
judgment rendered for the defendants, and appeal by
plaintiffs. *No error.*

On April 4th, 1911, the State Senate passed a resolu-
tion, known as Senate rule No. 27, which reads as
follows: "*Resolved by the Senate:* That the rules of the
Senate be and hereby are amended by adding thereto
the following: 27th. Within a reasonable time after
the organization of the Senate, a president pro tempore
shall designate eleven reporters of Connecticut news-
papers to report the proceedings of the Senate. If said
reporters shall have continuously attended upon the
Senate during the legislative session they shall be
entitled each to receive compensation therefor in the
sum of three hundred dollars; and upon the certification
by the president pro tempore to the comptroller that
such reporters have been in such attendance, the comp-

troller shall draw his order on the treasurer for said
sums in favor of the persons entitled thereto."

On the 5th of June, 1911, the applicants in the present
proceedings brought an action against the present
defendants, returnable to the Superior Court in Hart-
ford County on the first Tuesday of September, 1911,
in which the plaintiffs described themselves as residents
and taxpayers of certain named towns of this State,
other than Hartford, and the defendants Bradstreet
and Lippitt as, respectively, the comptroller and treas-
urer of this State, and as residing, one in Thomaston,
and the other in Norwich.

The complaint in said action alleged that the Senate
passed rule 27, above set forth; that on April 6th, 1911,
the president *pro tempore* of the Senate, pursuant to
said rule, designated eleven named reporters of Connec-
ticut newspapers; that each of said reporters attended
the sessions of the Senate in the course of his employ-
ment by the owner of the newspaper for which he re-
ported, and not in the performance of any duty or
service which he owed the Senate or State; that such pay-
ments to said reporters would, if made, be gratuities, and
would be illegal; that the plaintiffs believed that the
president *pro tempore* would certify that said reporters
had continuously attended the session of the Senate;
and that the comptroller would draw his order upon
the treasurer, and the treasurer would pay $300 to
each of said reporters, unless restrained by order of
court.

The complaint asked for an injunction restraining
the comptroller from drawing "any order upon the
treasurer of said State in favor of any person on the
certification of the president *pro tempore* of the Senate
as set forth in the resolution aforesaid," and restraining
the treasurer "from making any payment upon the
order of said comptroller to, or for the benefit of, any

Deming *v.* Bradstreet.

person certified by the president *pro tempore* of the Senate in accordance with the terms of said resolution."

On the day said action was commenced the plaintiffs presented said complaint to a judge of the Superior Court and applied for a "temporary injunction restraining the defendants as prayed for."

The parties to said action, and said named reporters, appeared at the hearing upon said application, and on the 19th of June said judge issued an order of temporary injunction, enjoining said comptroller and treasurer in the following language: "ORDERED, that you, Thomas D. Bradstreet, as Comptroller of the State of Connecticut, be and are hereby enjoined and restrained until further order of the said Superior Court in said action, or of a judge thereof, from drawing your order upon the Treasurer of said State for the payment to any one of the following persons, to wit: [Here follow the names of the eleven reporters named in said complaint] who shall claim to have been designated by the president *pro tempore* of the Senate of said State, now in session, as a reporter of the proceedings of said Senate, who shall claim such payment under authority of the resolution of the Senate referred to in paragraph 2 of the complaint in said action, which resolution provides for payment to each of the reporters so designated who shall be certified by the president *pro tempore* of the Senate, to have continuously attended upon the Senate during the present legislative session. And that you, Costello Lippitt, as Treasurer of the State of Connecticut, be and are hereby restrained and enjoined from making any payment to any of the persons above named, which payment shall be, by authority of the said resolution of the Senate, claimed by such person by reason of his having been designated as such reporter and having attended upon the Senate."

It was stipulated, for the purposes of argument upon said application for a temporary injunction, that each of said designated reporters was employed by the owner of the newspaper for which he reports; and that he owed no duty to the Senate, unless by reason of said rule 27.

On the 12th of September, 1911, the Senate passed the following resolution: "*Resolved by this Assembly:* Senate Rule Number 27, adopted April 4, 1911, is hereby repealed and rescinded, and all appointments made under said Rule by the President *pro tem.* of the Senate are hereby declared null and void."

Afterward, during said day, the Senate passed the following resolution, known as resolution No. 133: "*Resolved by the Senate:* The treasurer of the State of Connecticut is hereby ordered and directed to pay the sum of three hundred dollars to each of the following named persons for special services: [Here follow the names of the same eleven reporters named in said temporary injunction order]."

Immediately after the passage of resolution 133, there was filed in the office of the comptroller, by or in behalf of each of the eleven named reporters, a bill in these words: "To special services to the Senate as reporter, $300." Eight of said bills appear to have been sworn to as correct by the respective claimants. One of the other three was sworn to by the attorney for said reporters, and the remaining two by another of said reporters than the one in whose behalf the bills were made out.

With these bills there was presented to the comptroller a copy of said resolution 133, certified to by the secretary of State, which, by direction of the comptroller, was registered in the comptroller's books, and was endorsed, "Registered in the office of the Comptroller under the provisions of § 129 of the General Statutes."

Across the face of a blank form of order on the treasurer, the deputy-comptroller wrote the following: "The attached order of the Senate for $3,300 is duly registered in this office." This writing was attached to the copy of resolution 133, and delivered to said reporters, to be presented to the treasurer; and said copy and said written statement of the comptroller were immediately presented to the treasurer, who thereupon paid to each of said reporters the sum of $300.

The usual course of business in disbursing State money was for the comptroller to draw his order on the treasurer, and for the treasurer to pay it. The method by which these reporters were paid was an unusual and long-disused one.

Prior to September 12th, the comptroller inquired of the Attorney-General what effect upon the injunction the rescission of rule 27 would have, and was informed that it would vacate it.

On the 6th of October, 1911, the plaintiffs filed petitions in the Superior Court, setting forth the averments of said original complaint; the terms of the order of the temporary injunction, and the other facts above stated; and praying that the defendants Bradstreet, comptroller, and Lippitt, treasurer, be adjudged guilty of contempt of court, and be punished therefor. The defendants Bradstreet and Lippitt appeared and filed their answers, denying, among other things, that their acts were in disobedience of said temporary injunction or in contempt of court.

On November 28th, 1911, the defendants moved the court to erase said original action and proceedings from the docket for want of jurisdiction of the parties. The court denied said motion, and the defendants excepted.

Upon the hearing of the applications, the plaintiffs claimed that the facts above stated showed that the

reporters claimed payments under rule 27; that the payments made were made under that rule; and that said acts of the comptroller and of the treasurer were in violation of the injunction order.

The court, at said hearing, found, among other facts, that the defendants had no intention of violating or disregarding said temporary injunction, but believed the statement of the Attorney-General that the force of the injunction was expended by the repeal of rule 27.

The Superior Court overruled the claims of the plaintiffs, and held that neither of the defendants had violated the injunction order.

The plaintiffs allege, as one of their reasons of appeal, that the conclusions of the trial court are not supported by the facts set forth in the finding.

*Leonard M. Daggett,* for the appellants (plaintiffs).

*John H. Light,* Attorney-General, and *Albert P. Bradstreet,* for the appellees (defendants).

HALL, C. J. We cannot sustain the plaintiffs' contentions, that it appears that the reporters' claims and the comptroller's registration and certification of resolution 133 and the payments by the treasurer, were made under rule 27.

The trial court has found that the reporters claimed the payments, and that the comptroller and treasurer understood them to claim the payments, under resolution 133, and not under rule 27; and that the comptroller and treasurer had no intention of violating the injunction, but relied upon the advice of the Attorney-General that by the repeal of rule 27 the temporary injunction was vacated.

The comptroller made no order upon the treasurer for the payment of the reporters' claims. Resolution

133 was itself a direct order by the Senate upon the treasurer to pay to each of the reporters $300 for special services. It was apparently registered, and the registry certified thereon, and upon the blank form, in compliance, or attempted compliance, with the requirements of §§ 89 and 129 of the General Statutes, requiring, before payment by the treasurer, the registration in the comptroller's books of orders not drawn by the comptroller, and providing in what form bills should be presented, before the order for their payment should be registered.

If the order of the Senate was not properly registered, for the reason that the bills of the reporters were not in proper form, or because not properly sworn to, it would not follow that the comptroller and treasurer acted under rule 27, or in violation of the temporary injunction.

Before any action relating to the payment of these reporters was taken by the comptroller or treasurer, rule 27 had been repealed, the appointments made under it had been declared void, and another rule or resolution adopted, providing a different method for the selection of the reporters to be paid, and making a different order for their payment. By rule 27, the selection of the reporters to be paid was to be made by the president *pro tempore;* and the comptroller was required to draw his order on the treasurer for the sums to be paid them. By the resolution 133, the selection of the reporters was made by the Senate itself. The comptroller was not required to draw his order on the treasurer for the payment of the claim; but the treasurer was directly ordered by the Senate to make the payments to each of the named reporters.

But it is claimed that it is apparent that the procuring of the repeal of rule 27 and the adoption of resolution 133 was a mere subterfuge, planned and carried out by the reporters' attorney, with the aid

of these defendants, for the purpose of evading the order of the judge of the Superior Court.

We should hesitate to believe that our State officers would knowingly become parties to a scheme devised for the accomplishment of such an object. The trial court does not find that such was in fact the purpose of the defendants. It is true that the court does state, in its memorandum of decision, that the facts found would, in its opinion, suggest to persons of less intelligence and experience in matters connected with the State government than these defendants, that to pay these reporters under resolution 133 would be to defeat the object sought to be accomplished by the plaintiffs' action.

But the question is not so much what motives actuated the defendants, as what acts were forbidden by the injunction. If, notwithstanding the injunction, the defendants, while acting in good faith, were justified in making the payments under resolution 133, they should not be punished for a violation of the injunction, because they so made the payments from motives which were not commendable. Although the fact, if it was a fact, that the defendants knowingly participated in a scheme to evade the injunction, may have been a proper subject for the consideration of the trial court, the controlling question after all was whether the injunction forbade the acts by which such scheme was accomplished.

It is true that an injunction may be violated by indirect, as well as by direct, methods; and that one cannot escape punishment upon the ground that he did not violate the letter, if he violated the manifest spirit of the injunction. 2 High on Injunctions (4th Ed.) § 1446; *Diamond Drill & Mach. Co.* v. *Kelley Bros.*, 130 Fed. Rep. 893; *Cary Mfg. Co.* v. *Acme Flexible Clasp Co.*, 108 Fed. Rep. 873, 48 C. C. A. 118; *Huttig Sash & Door*

*Co.* v. *Fuelle,* 143 Fed. Rep. 363; *Gibbs* v. *Morgan,* 39 N. J. Eq. 79.

A temporary injunction is a preliminary order of court, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court. It was therefore the duty of these defendants to read the temporary injunction in the light of the purpose of the original suit, as shown by the averments of the complaint and the relief prayed for in that suit.

But it was not their duty to determine what order was required to be made in order to properly protect the rights of the parties during the pendency of the original action. That was a question for the judge making the preliminary order. In making that order, it was his duty to consider the averments and prayers for relief in the original action, to base his order upon them, and to frame it in such terms that, when fairly interpreted, the persons enjoined would clearly understand what acts they were restrained from doing.. *Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121, 125; *Baldwin* v. *Miles,* 58 Conn. 496, 502, 20 Atl. 618; *Kaspar* v. *Dawson,* 71 Conn. 405, 411, 42 Atl. 78.

Looking at the complaint in the original action, we find that it alleges the adoption on the 4th of April of rule 27; the designation by the president *pro tempore,* "pursuant thereto," of the eleven named reporters; that the payments provided for "in said resolution [rule 27] are intended to be and are in fact gratuities," and "if made, will be illegal." The two prayers for relief are: (1) An injunction restraining the comptroller "from drawing any order upon the treasurer . . . in favor of any person on the certification of the president *pro tempore* of the Senate as set forth in the resolu-

tion aforesaid" (rule 27); (2) an injunction restraining the treasurer "from making any payment upon the order of said comptroller to, or for the benefit of, any person certified to by the president *pro tempore* of the Senate in accordance with the terms of said resolution" (rule 27).

Unless it can be said that the averment that payment under rule 27 would be payments of gratuities, and would be unlawful, is an averment that such payments could not be ordered by the Senate to be made, the complaint contains no averment that it would be unlawful or unconstitutional for the Senate to, in any manner, direct the treasurer to pay said sums to the reporters.

The prohibition of the temporary injunction, above set forth, is expressly limited to the drawing of orders by the comptroller for the payment to persons claiming under the authority of rule 27, and to the payment to such persons by the treasurer, by authority of said rule 27.

Reading the injunction order either by itself, or in connection with the averments and prayers of the original complaint, we are of opinion that it does not so clearly prohibit the acts of the defendants, in paying the reporters under the circumstances stated, and under the authority of resolution 133, as required the court to adjudge them guilty of contempt.

As the motion to erase was decided in favor of the plaintiffs, and as a new trial is not granted, we do not consider the questions presented by the defendants' exceptions to the denial of their motion to erase.

There is no error.

In this opinion the other judges concurred.