## WILLIAM PARADISI
*vs.*
## ROSARIO CASERTA

Coram: Hon. John C. FitzGerald, A Judge of the Court of Common Pleas

MEMORANDUM FILED SEPTEMBER 10, 1941.

*Louis Feinmark,* of New Haven, for the Plaintiff.

*John Maresca,* of New Haven, for the Defendant.

FITZGERALD, J. This action was instituted by writ, summons and complaint dated August 25, 1941, wherein the plaintiff seeks damages of the defendant in the amount of $2,500 and, in addition thereto, a temporary injunction, a

permanent injunction, a temporary mandatory injunction, and a permanent mandatory injunction. The action is made returnable to this court on the first Tuesday of October next, 1941. On said August 25, 1941, the undersigned, as a Judge of the Court of Common Pleas, said court not then being in session, issued a rule to show cause requiring the named defendant to appear before him on September 8, 1941, and to show cause why the temporary injunction prayed for in said writ, summons and complaint should not issue against him. The officer's return, which is not questioned, sets forth that service was duly made on the defendant on said August 25, 1941, being the date when the aforesaid rule to show cause was issued.

The hearing was duly held before the undersigned, as judge aforesaid, on the afternoon of said September 8, 1941, at the County Court House in New Haven.

The evidence discloses that the plaintiff and the defendant are owners of, and reside on, adjacent properties situated on Hunter's Lane in the City of Ansonia, the location of which may be more particularly described as being on the easterly outskirts of said city. Hunter's Lane, at least in the locus of the plaintiff's and defendant's respective properties, has a natural westerly slope estimated by Vincent Clark, city engineer of Ansonia, to be a drop of 12 to 15 feet in every 100 feet. The defendant's property is located directly to the east of the plaintiff's property and consequently, because of the aforesaid westerly slope of the terrain, occupies higher ground than that of the plaintiff. Snapshots put into evidence by the plaintiff (particularly Exhibits A and B) indicate that the aforesaid westerly slope of the terrain is substantial, and that the plaintiff's property in fact occupies a much lower level than that of the defendant.

The plaintiff has lived on his Hunter's Lane (No. 4) property with his family for the past 20 years. There was nothing in the evidence to indicate the size of the plaintiff's house located thereon, but as gauged by plaintiff's Exhibit A, the building is a two and one-half story structure of modest size. Plaintiff maintains a well in the front area of his property which may be described as being located in the general southeast corner of his property. It is the water of this well from which the plaintiff and his family have derived the source of supply for household purposes—drinking, washing, toilet,

etc.—until recent date. It appears that householders on Hunter's Lane, Ansonia, are obliged to furnish their own water supply and hence driven wells with a piping arrangement still remain the order of the day on the eastern outskirts of Ansonia where Hunter's Lane is located.

There is a stone wall of about four and one-half feet in height located on the boundary line of the plaintiff's and defendant's property, extending in a general northerly and southerly direction. It appears that the top of this wall is approximately level with the lower westerly margin of the defendant's property. The plaintiff's well is located about 10 or 12 feet west of the aforesaid wall, and some few feet inside of his front, or southerly line, along which line a hedge extends westerly for several feet. Plaintiff's house is located about 15 feet west of his well, and some 25 to 27 feet west of the aforesaid four and one-half foot high boundary line wall. The wall itself is about one foot wide.

Property owners on Hunter's Lane, in addition to furnishing their own water supply by means of driven wells, have another feature to contend with which is reminiscent of the last century, namely, lack of a municipal sewerage system. It is this aspect which gives rise to the limits of this action. It appears that property owners on Hunter's Lane have a choice of one of two private alternatives in disposing of their sewerage—the use of a septic tank or the more antiquated method of maintaining a cesspool. Both the plaintiff and the defendant maintain cesspools in this connection.

Plaintiff's cesspool is located to the rear of his house. The defendant maintains two cesspools, one being located to the rear of his house and the other in his front yard. It is the maintenance and use of the latter cesspool that has prompted this action and forms the bases of the plaintiff's prayer for injunctive relief.

The defendant has owned and occupied his property on Hunter's Lane since 1920. It appears that in 1930 the defendant constructed the cesspool in his rear yard, the cesspool in his front yard having been used exclusively by him until said year. Since 1930 the cesspool in the defendant's rear yard, according to his testimony, has been used *almost exclusively*. As a matter of fact it was the defendant's original testimony that the cesspool in his front yard has not been

used at all since the advent of the new cesspool in his rear yard in 1930. When his recollection was "refreshed" by reference to certain testimony given by him a short while ago in a certain proceedings in the City Court of Ansonia, the defendant seemed to comprehend more fully the significance of questions put to him by counsel. Fairness requires me to say that the defendant's understanding of English is probably limited. After being offered as a witness by the plaintiff, and questions were put to him by plaintiff's counsel in English, he was briefly cross-examined in English by his own counsel. Thereafter he took the stand in his own behalf and was allowed to be examined on direct and in cross through an interpreter. His attitude while on the stand on both occasions may be described as being "slightly hostile." Nothing more need be said on this point.

Now to continue on. The plumbing arrangement in the defendant's house is such that either of his two cesspools could be used for sewerage disposal. In fact, rain water gathered on the roof of the defendant's house, under the present plumbing arrangement, finds its way to the cesspool in his front yard. Also, a portion of the defendant's testimony was to the effect that sewerage disposal from the front part of his house has been finding its way to the cesspool in his front yard at least periodically and with some frequency since 1930 to date hereof. These aspects apart, the sewerage from the defendant's house, in the main, goes to the cesspool in his rear yard, according to his testimony. The fact remains, however, that the plumbing arrangement in the defendant's house is such that either cesspool could be employed. Whether or not the defendant made a greater use of the cesspool in his front yard for sewerage disposal within recent time than he admits, is a fact the exact proof of which the plaintiff cannot show with exactitude. That the defendant *could* have resorted to a greater use of the cesspool in his front yard than he admits, is patent. In a case of this character the wrong done, or the injury sustained by a plaintiff, is invariably gauged by physical facts not dependent upon the scope of the defendant's testimony.

The evidence discloses that in April last the plaintiff, and his family, noticed an unpleasant odor emanating from their well water, that the water appeared to be dirty in color, was unpleasant to taste, and finally became of such a character

that to attempt to wash clothes therewith would result in a failure to eradicate dirt, if not add to the same. Samples of the water put into evidence by the plaintiff, together with a "washed shirt", are deemed by me to be conclusive on this score.

There was also evidence that a coffee-colored liquid commenced to seep and trickle through the aforesaid boundary line wall at least commencing April last. This occurred in the vicinity of the plaintiff's well and a sample of this liquid was offered in evidence by him. Dr. John M. Renehan, health officer of the City of Ansonia, observed this condition on the plaintiff's property when he inspected the same in early July last, and testified as to his observations at the hearing on September 8th.

It further appears that the cesspool in the defendant's front yard is in the general direction of the aforesaid boundary line wall. The defendant himself testified that the frontage of his property on Hunter's Lane is about 80 feet. Although there was no evidence offered by either of the parties as to the exact location of the defendant's cesspool in his front yard (cesspools are covered affairs and under the circumstances it would be impossible for a plaintiff to show exact location in the absence of cooperation by a defendant), I feel justified in concluding from all of the evidence, by inference, that this cesspool is located somewhere in the southwest section of the defendant's front yard on an approximate line with the plaintiff's well. It is to be particularly noted that the expert witnesses offered by the plaintiff—Mr. Clark, city engineer of Ansonia, and Dr. Renehan, health officer of Ansonia—and even the bacteriologist offered by the defendant—Dr. Hazel Gillespie—are satisfied that the plaintiff's plight is occasioned by the location of the cesspool in the defendant's front yard coupled with the aforesaid westerly slope of the terrain in the direction of the plaintiff's property from that of the defendant.

The expert witnesses were also in agreement that it would be some few years, possibly five years, before the damage done to the plaintiff's well water would be rectified by nature, even if the defendant's cesspool in his front yard were entirely eliminated at this time. It was Dr. Renehan's opinion, however, that from a sanitary standpoint the seepage of the coffee-colored liquid through the aforesaid boundary line wall

upon the plaintiff's property, deriving its source from the cesspool in question of the defendant, in itself creates a health menace apart from a consideration of harm to the plaintiff's water supply.

Incidentally, the evidence discloses that the plaintiff and his family, of recent date, have been obliged to carry upon the premises water for drinking and washing purposes, because of the condition of their well water. This aspect is only touched upon herein by way of reference, since it is an element that will be of importance at a later date on questions relating to damages and permanent injunctions.

To go no further, it is clear that the plaintiff is entitled at this time to relief in the nature of a temporary injunction. The defendant apparently will do nothing himself, in a voluntary sense, to remedy a most unpleasant and grossly unsanitary condition occasioned by his maintenance and use of the cesspool in the front yard of his Hunter's Lane property. "A temporary injunction is a preliminary order of court, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court." *Deming vs. Bradstreet,* 85 Conn. 650, 659.

The evidence given at the hearing on September 8th was particularly strong, from the plaintiff's standpoint. That the plaintiff has been contending with a condition properly described as a nuisance, is beyond all question in my mind. *See Bush vs. City of Norwalk,* 122 Conn. 426, 428, citing *Hoffman vs. City of Bristol,* 113 id. 386, 389. Notwithstanding the fact that the defendant owns the land upon which the offending cesspool is located, he has no right to affect the plaintiff's enjoyment of his adjoining property, or of his well. *See Swift & Co. vs. Peoples Coal & Oil Co.,* 121 Conn. 579, 591. To the plaintiff, the owner of land, the situation as to him falls under the heading of a "private nuisance." *Webel vs. Yale University,* 125 Conn. 515, 525; *Hassett vs. Palmer,* 126 id. 468, 476.

In view of all the foregoing, therefore, plaintiff's prayer No. 1—"A temporary injunction restraining the defendant from the continuance of the nuisance (use and maintenance of the cesspool in question) above described"—is granted. As

to plaintiff's prayer No. 3—"A temporary mandatory injunction requiring the removal of said cesspool"—is granted at this time only in a qualified sense, to wit, that said cesspool be cleaned out by the defendant. Dr. Gillespie, the defendant's expert witness, testified that she herself had recommended the adoption of this course to the defendant. In passing I make the observation that it would be commendable if the defendant at this time filled in said cesspool to avoid injury to third parties having occasion to walk over the same. However, it is not so ordered.

Prayers 2 and 4, relating to matters de permanent injunctions, are of course not considered by me in these proceedings.

I first direct that the plaintiff, pursuant to section 5899 of the General Statutes, Revision of 1930, furnish a bond with surety satisfactory to me, in the amount of $75, in favor of the defendant for reasons specified in said statute, on or before September 17, 1941. See McAllin vs. McAllin, 77 Conn. 398, 402. Said bond may be patterned upon form No. 458, page 290, Practice Book (1934).

This being done, counsel for the plaintiff is then directed to draw up an order of temporary injunction in conformity with this memorandum, and present the same for my approval as to form. Said order is to be served upon the defendant not later than September 20, 1941, and the same is to be complied with by him not later than October 4, 1941.