## FRANK FORBES

*vs.*

## HOUSING AUTHORITY OF THE CITY OF NEW HAVEN ET ALS.

Court of Common Pleas   New Haven County   File No. 33931

## MEMORANDUM FILED JANUARY 14, 1943.

*Edward S. Snyder,* of New Haven, for the Plaintiff.

*Donald E. Cobey,* of New Haven, for the Defendants.

*J. Stephen Knight,* of New Haven, Acting Chief Rent Attorney for New Haven Defense-Rental Area, *Amicus Curiae.*

Memorandum of decision *de* defendants' motion to dissolve temporary injunction.

FITZGERALD, J.   On January 5, 1943, plaintiff applied to the undersigned for the issuance of a temporary injunction having for its objective the enjoining of the defendants from "prosecuting or continuing any summary process action intending to dispossess (plaintiff) and/or any members (of his

family) from the premises described" in the complaint. The temporary injunction was granted *ex parte* as on file.

"A temporary injunction is a preliminary order.... granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court." *Deming vs. Bradstreet*, 85 Conn. 650, 659.

On January 6, 1943, defendants moved the undersigned to dissolve the temporary injunction so issued on the grounds that "the material facts relating thereto" had not been fully disclosed and that the defendants were being unjustly denied "the summary procedure for eviction provided by the statutes of this State."

Hearing on the defendants' motion came before me on January 8, 1943.

A preliminary observation is deemed appropriate at this point. It is, of course, the better policy to withhold the issuance of a temporary injunction until notice has been given to the opposition and a hearing assigned for consideration of the merits. Circumstances, however, alter many things. If a situation in the nature of an emergency is deemed to be present, a preliminary injunction may issue *ex parte* upon affidavit of the applicant, and without bond. The temporary injunction in this action was issued at 10:45 on the morning of January 5, 1943, on the representation of plaintiff's counsel that at 11:00 a.m. on said morning the summary process action, in which the defendant Housing Authority is plaintiff and the plaintiff herein is defendant, was to come before a local justice of the peace for trial and judgment. A situation in the nature of an emergency was deemed by me to exist and the temporary injunction was allowed to issue forthwith.

The defendants' motion to dissolve necessarily brings before me in full form the claims of the respective parties. In a word, I am now able to distinguish between substance and shadow.

By agreement of counsel the question to be determined at this time is whether or not the defendant Housing Authority has the legal right to set rent *de* the four room unit in question, occupied by plaintiff and his family since June 12, 1941, at a higher rate than that provided for in a written lease of

a month-to-month character executed between the parties on said date.

The monthly rent fixed in the lease of June 12, 1941 (in reality a month-to-month lease containing a cancellation clause) was $17.50 per month. The monthly rent subsequently determined by the defendant Housing Authority as "the rent generally prevailing in the defense-rental area (which includes the City of New Haven) for comparable housing accommodations on April 1, 1941" was $43 per month. The dwelling unit in question is composed of four rooms and located in the Elm Haven housing accommodation owned and conducted by the defendant Housing Authority.

Plaintiff argues that the rent fixed between the parties on June 12, 1941 (new building not previously occupied), represents the maximum rent that the defendant Housing Authority is legally entitled to ask and receive under the Emergency Price Control Act of 1942 adopted by the United States Congress and approved by the President on January 30, 1942. (See Public Law 421, 77th Congress, 2d Session, chapter 26, 56 Stat. 23, 50 U.S.C.A., Appendix, §901, *et seq.*) More particularly, plaintiff's argument is predicated upon the portion of section 4(c) of Maximum Rent Regulation No. 26 For Housing Accommodations Other Than Hotels and Rooming Houses, which reads: "Maximum rents (unless and until changed by the Administrator as provided in Section 5) shall be:.... (c) For housing accommodations not rented on April 1, 1941 nor during the two months ending on that date, but rented prior to the effective date of this Maximum Rent Regulation (July 1, 1942), the first rent for such accommodation after April 1, 1941...."

Defendants, on the other hand, argue that the applicable section of the aforesaid regulation is section 4(g) thereof, which reads: "Maximum rents (unless and until changed by the Administrator as provided in Section 5) shall be.... (g) For housing accommodations constructed by the United States or any agency thereof, or by a State of the United States or any of its political subdivisions, or any agency of the State or any of its political subdivisions, and owned by any of the foregoing, the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on April 1, 1941, *as determined by the owner of such accommodations* (italics mine); Provided, however, that any corporation formed

under the laws of a State shall not be considered an agency of the United States within the meaning of this paragraph. . . ."

The answer to the question propounded depends upon whether the defendant Housing Authority is to be considered as that species of corporations referred to in that portion of section 4(g) preceding the words "Provided, however," or that species following the two words quoted from the text thereof. That there is a line of demarcation intended by the drafters of Regulation No. 26 cannot be doubted.

Chapter 33c of the 1939 Cumulative Supplement to the General Statutes of Connecticut is concerned with the statutory law pertaining to the various housing authorities in Connecticut. Section 180e thereof, among other things, provides that "in each municipality of the state there is created a public body corporate and politic to be known as the 'housing authority'." Subsection (c) of section 189e provides, among other things, that "bonds may be additionally secured by a *pledge of any grant or contributions from the federal government or other source* (italics mine); and section 192e, entitled "Aid From Federal Government", specifically confers upon a Connecticut housing authority attributes dissimilar to those of other corporations. By way of illustration, the last sentence of section 192e reads: "It is the purpose and intent of this chapter to authorize every authority to do any and all things necessary or desirable to secure the financial aid or cooperation of the federal government in the undertaking, construction, maintenance or operation of any housing project by such authority."

In a word, the sections referred to, if not others, clearly place the defendant Housing Authority in that species of corporations falling within the orbit of the first part of section 4(g) of Regulation No. 26 preceding the words "Provided, however." It is obvious that the latter part of section 4(g) has reference to the more usual species of corporations existing under, and by virtue of, the general corporate laws of the respective states of the union.

I am bound to take, and do take, judicial notice of the social scheme of things, in a national sense, which has prompted the enactment of the legislation in question. Were it not for the promptings, assistance and supervision of the federal government, and its agencies, chapter 33c of the 1939 Cumulative Supplement to the General Statutes would never have

been promulgated. The philosophy behind the Connecticut legislation which has resulted in the creation of the defendant Housing Authority was born in the cradle of "New Deal" Washington. Whether or not it is salutary is not a question herein involved. Frankness would admit that much could be said on both sides of the latter, but not pending question.

At the conclusion of the hearing on January 8, 1943, I asked Mr. J. Stephen Knight, Acting Chief Rent Attorney for the New Haven Defense-Rental Area, who had been called as a witness by the defendants, but whose testimony was actually that of a disinterested person, to file his appearance as *amicus curiae* and favor me with a memorandum on legal aspects which are necessarily involved in the question presented. Mr. Knight has graciously filed such an appearance, and in addition has submitted a memorandum which has proved most helpful in analyzing the limits of the question presented. The memorandum thus filed is considered by me to be of such value as to be attached to my own memorandum of decision and incorporated herein by reference. The method adopted in employing Mr. Knight's memorandum by reference and incorporation necessarily results in making my own memorandum of decision, which would otherwise be of inordinate length, shorter and more compact.

It would serve no useful purpose to attempt to discuss or elaborate upon those points which Mr. Knight has so well treated.

I am of the opinion, and so rule, that the question presented—whether or not the defendant Housing Authority has the legal right to set rent *de* the four room unit in question, occupied by plaintiff and his family since June 12, 1941, at a higher rate than that provided in a written lease of a month-to-month character executed between the parties on said date—should be resolved against the plaintiff and in favor of the defendant Housing Authority. My own discussion and that of Mr. Knight contained in his memorandum which is attached hereto and made a part hereof, can permit no other answer to the question presented. In any and all events, the right of plaintiff to have filed a protest with the Administrator from the action of the defendant Housing Authority in setting the monthly rent at $43 per month, and his further right of appeal to the United States Emergency Court of Appeals from any adverse action of the Administrator, was given to plaintiff under the federal Act.

This being so, plaintiff, under the circumstances, should not be given recourse to injunctive relief when the law in its present form has provided him with a method of review in the federal channel.

Plaintiff's counsel has indicated that there are other questions of a legal and equitable nature that he is desirous of having me consider in the event that the question herein presented and treated should be resolved against his client. Therefore, rather than enter an order at this time terminating the temporary injunction which issued on January 5, 1943, I shall permit the same to remain in effect until the afternoon of January 22, 1943, when the parties are again directed to appear before me to the end that remaining questions may be considered in their proper order.

In this connection, I suggest to counsel that it would be in the interests of time and orderly procedure if they could agree on any subordinate facts that might relate to further questions of law and of equity which the plaintiff desires to have me consider.

---

Memorandum of J. Stephen Knight,
Appearing as *Amicus Curiae.*

Public Law No. 421, 77th Congress, 2d Session, chapter 26 is an Act, section 306 of which provides that it may be cited as the Emergency Price Control Act of 1942. Under section 2, subsection (b) of this Act, the Administrator, who is to be appointed by the President, has authority to issue regulations and orders fixing maximum rents in areas declared to be defense-rental areas. Under section 2(c) of the Act, the Administrator is given authority to provide for classifications and differentiations as in his judgment are necessary or proper in order to effectuate the purposes of the Act.

Pursuant to the authority so authorized, the Administrator promulgated Maximum Rent Regulation No. 26 applicable to housing accommodations in the New Haven Defense-Rental Area comprising the City of New Haven and 14 surrounding towns. This regulation covers all housing accommodations other than hotels, rooming houses, etc. Under section 4 of the said regulation (Federal Register 1388.114) the method of establishing maximum rents is set forth. Under subsection (g) of said section a separate classification is established for

public housing as distinguished from privately-owned housing accommodations. For privately-owned housing accommodations the general rule is that the rents are fixed as of the existing rate on April 1, 1941, that is, the economic rent as of that date. Because the rents charged in subsidized public housing projects were, because of the subsidy, considerably under the economic charges for comparable housing accommodations, it is provided in said subsection (g) that the ceiling prices for housing accommodations within such projects should not be set by reference to the April 1, 1941, rent paid and received but by reference to the rent level for comparable accommodations in the defense-rental area on April 1, 1941. This ceiling price is to be established by the owner of the accommodations, and the section further provides that the Administrator may order a decrease in said maximum rents, as determined by the owner, if the Administrator finds that such rents are not in fact comparable rents as of April 1, 1941, or if the Administrator finds certain other conditions set forth under section 5(c) of the regulation (Federal Register 1388.115[c]).

Pursuant to said section 4(g) of Maximum Rent Regulation No. 26, the New Haven Housing Authority registered its properties and determined that for 4-room units the generally prevailing rent in the New Haven Defense-Rental Area for comparable housing accommodations on April 1, 1941, was $43. Said registration is on file with the Area Rent Office and the Administrator has taken no action to decrease the said maximum rent so established.

Section 2 of the regulation (Federal Register 1388.112), subsection (a), provides a prohibition against any person demanding or receiving any rent, subsequent to the effective date of the regulation (July 1, 1942), in excess of the maximum rent established under the regulation. The said subsection specifically provides that lower rents than those established under the regulation may be demanded or received, and there is nothing in the regulation expressly or impliedly prohibiting fluctuations in the amount of rent below the established maximum. So far as the records of the New Haven Defense-Rental Area office are concerned, the Housing Authority of the City of New Haven has complied with every requirement of the Emergency Price Control Act of 1942 and of Maximum Rent Regulation No. 26; its ceiling rents have been properly determined and set; and there is nothing in the

pleadings or proof of the present litigation indicating any violation of either the said Act or the said regulation.