[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 9, 1992, the court entered judgment in this case in favor of the plaintiffs. The judgment consisted of a declaratory judgment that "stockpiling" as a method of promotion within the New Haven Fire Department was illegal. The court declared that certain promotions made after March 31, 1988 pursuant to the practice of stockpiling were void. The court entered a permanent injunction prohibiting the defendants from promoting individuals from eligibility lists that had expired on March 31, 1988, and December 29, 1989. CT Page 4907
Stockpiling consists of promoting individuals to positions that are not yet vacant just prior to expiration of a promotion eligibility list. The eligibility list is one compiled by the New Haven Civil Service Commission based on competitive examination. The life of the list is at least one year but no greater than two years. Once a list expires, a candidate on the list who has not been promoted must sit for a new exam in order to requalify for promotion. Stockpiled candidates did not have their eligibility for promotion expire. Rather individuals so promoted did not receive the pay or perform the duties of the higher position until a vacancy in fact occurred and the individual was assigned by the Fire Chief to fill the vacancy. The practice of stockpiling had the effect of circumventing the expiration of the list and the necessity of requalifying, in contravention of the Civil Service Regulations.
It was specifically the practice of stockpiling that was declared illegal in the judgment of June 2, 1992.
The plaintiffs come now to the court on a Motion for Contempt seeking sanctions against the defendants for violating the declaratory judgment and permanent injunction. They claim that the old practice of stockpiling is still being practiced by the defendants under a new name: underfilling. Indeed the court finds that the defendants have utilized the practice of underfilling increasingly since 1992.
Underfilling occurs when there is a vacancy for an existing position in the personnel budget for the Department; the individual selected to fill such position is on an active Civil Service eligibility list; the individual is assigned by the defendants the title, duties, and salary of the position for which the candidate has been deemed qualified under the Civil Service process; the individual fills the position on a permanent basis; but the budget slot filled by the individual is for a higher rank and higher salary than that of the candidate filling the slot.
The current controversy provides a set of examples. The personnel budget for the New Haven Fire Department for the last several years has approved slots for 25 captains and 45 lieutenants. Beginning in January 1996 as a result of competitive examination, the New Haven Civil Service Commission certified a list of 70 firefighters eligible for promotion to lieutenant. CT Page 4908 After some were promoted into open lieutenants slots in the budget, no further open slots for lieutenants existed for a time. However there were vacancies in certain slots for captain, and no Civil Service eligibility list was in existence at that time for captains.[1]
Instead of allowing captains positions to remain vacant or waiting for a new Civil Service eligibility list for captains to be certified, the defendants decided to promote persons to lieutenant from the active list of eligible lieutenants. Each was approved and appointed by the Board of Fire Commissioners on the recommendation of the Fire Chief and was placed into one of the vacant captains slots in the budget. These individuals hold the rank of lieutenant, have lieutenant's duties, are paid lieutenant's pay, and take the place in the budget documents in a captain's slot. As long as the salary of the appointed position does not exceed the salary of the budgeted position for that slot, there is no impediment to underfilling. According to budget documents from as early as 1992, underfilling has been a common practice; and it has not been confined to the situation where a firefighter is promoted to lieutenant by underfilling a captain's slot. In the current personnel roster of the Department (Exhibit B), persons with the title Firefighter II, at a salary of $29,000, underfill slots budgeted at $43,309 for Firefighter 1st. Five persons classified as Communication Operator I receiving a salary of $21,462 underfill slots for Communication Operator II or III, slots with a budgeted pay rate of $22,920-$24,590. Many Firefighter Trainees who have been hired recently at a pay rate of $27,500 underfill slots for Firefighter 1st ($43,309), and seven of them underfill slots for Captain ($54,309). And, at issue here, nine lieutenants ($48,726) underfill slots budgeted for captains ($54,309).
In order for the court to find the defendants in contempt, the court must find by competent evidence that the defendants have violated the court order prohibiting the practice of stockpiling. See Cologne v. West Farms Associates (Cologne II),197 Conn. 141, 156-57 (1985); Papa v. New Haven Federation ofTeachers, 186 Conn. 725 (1982). The plaintiffs suggest that underfilling is "a contrived, transparent manipulation" (Brief of Plaintiffs, p. 8), of the promotional system in an attempt to circumvent the civil service rules and the 1992 declaratory judgment. The court, on the basis of the evidence before it, is unable to reach this conclusion. CT Page 4909
The court recognizes that in circumstances when alleged contemnors are engaged in some subtrefuge to circumvent an injunction, the court can nonetheless act to enforce its orders. See, e.g., DeMartino v. Monroe Little League, Inc., 192 Conn. 271
(1984). But as a threshold issue, the court must first determine whether the 1992 judgment prohibited a range of conduct which had an adverse impact on the plaintiffs or merely prohibited a specific practice. If it is the former, then the court may be able to consider whether, as the plaintiffs claim, underfilling has the same effect as stockpiling. If it is the latter, the court is restricted to considering whether underfilling is the identical practice to stockpiling, albeit with a different name.
In this regard, the old case of Baldwin v. Miles,58 Conn. 496 (1890), is instructive. The defendant operated a fish oil and fish pumice business. With the byproduct of the business, "large quantities of dried fish scrap," the defendant also manufactured phosphate manure by mixing these remains with phosphate, sulfuric acid and coal tar. The results were "nauseous and sickening stenches" and "acrid and tarry substances of filthy and disgusting smell" within a two mile radius. The business of extracting fish oil and making fish pumice also produced a disagreeable smell, but not one sufficient to constitute a nuisance. The court entered an order that prohibited the use of acid to make fertilizer and further prohibited that "said business be so carried on at said establishment as to produce any noxious or offensive odors or stenches constituting a nuisance. . . ." Id. at 500.
Three years later the plaintiffs returned to court and moved for contempt on the grounds that noxious and offensive odors were emanating from the defendant's business. Even though the trial court found that no acid-containing fertilizer had been manufactured in violation of the injunction, it found the defendant in contempt because of the smell. The Supreme Court reversed, holding that the injunction must be read as a whole for an understanding of what is prohibited. In that case, the practice complained of was the manufacture of phosphate manure, and that was the basis on which the case was presented to court and on which the court entered the injunction. The fact that now a smell was coming from some other process, such as from the original fish oil business, was insufficient to support a finding that the defendant was in contempt of the order. Even an alternative finding would not allow the plaintiffs to prevail, for that would mean that the language of the original injunction CT Page 4910 was "too vague and indefinite to be the foundation of proceedings for contempt." Id., at 502.
The plaintiffs in the instant case may indeed smell something fishy, but as in Baldwin v. Miles, supra, it comes from some other process than that prohibited by the 1992 declaratory judgment. If underfilling also contravenes the Civil Service Regulations, the City Charter, or some other rule or statute, it must be the subject of a new action as it does not provide a basis for a finding of contempt in this case.
The plaintiffs' Motion for Contempt is denied.
PITTMAN, J.