LINDA LEGG *v.* DAVID W. LEGG
(15314)

Dupont, C. J., and Lavery and Landau, Js.

Submitted on briefs December 18, 1996—officially released February 18, 1997

*Richard S. Scalo, Ronald D. Japha* and *Abraham I. Gordon* filed a brief for the appellant (plaintiff).

*David Legg,* pro se, the appellee (defendant), filed a brief.

PER CURIAM. This case arises out of a judgment rendered in connection with a motion for contempt filed after a judgment of dissolution of marriage. The issue presented is whether, when the parties have agreed in a stipulation incorporated into the judgment of dissolution that they will share the cost of their children's postsecondary education, including room and board, each is responsible for one half of the cost of room and board when the child lives at home with one party, rather than on the college campus.[1] The trial court, *Munro, J.*, held that the defendant was not responsible. On the basis of the stipulation that the parties executed, we conclude that the defendant is responsible for the costs in question and reverse the judgment of the trial court.

The plaintiff and the defendant were married on February 3, 1973, and the judgment of dissolution was rendered on May 21, 1990, by the court, *F. Freedman, J.* There are two children of the marriage, Robert Legg and Timothy Legg, who were sixteen and fourteen years of age respectively at the date of judgment.

The defendant has a history of making untimely support payments and had appeared in the trial court many times since the dissolution judgment on numerous motions for contempt filed by the plaintiff. These con-

---

[1] The pertinent language in the stipulation provides: "The parties agree that each will pay one-half of the post-secondary educational expenses (limited to tuition, room and board, books and school fees) of each child of the parties until such child reaches the age of 23 and to the extent that such expenses are not covered by scholarships or student loans. In no event shall the annual liability of either party for such expenses exceed one-half of the total cost for that year of such expenses for an in-state full-time undergraduate student at the University of Connecticut."

tempt hearings were ongoing from 1991 to 1995. The plaintiff has alleged in these contempt motions the failure of the defendant to make both general child support payments and payments for the education expenses of both Robert and Timothy.[2] This appeal concerns the education expenses of Timothy only.

The motion for contempt involved in this appeal alleged that the defendant had not paid his share of Timothy's tuition, books, and room and board at Quinnipiac College. Timothy entered Quinnipiac College in the fall of 1994 and lived at home with his mother to reduce expenses. The room and board claimed for one

---

[2] The following is a history of the nine motions for contempt filed against the defendant and the changes in the support payments that resulted. The plaintiff's first motion for contempt was filed on July 22, 1991, and was amended on August 1, 1991. The motion alleged, among other things, that the defendant had failed to make the $285 weekly payment on at least one occasion. The plaintiff filed a second motion for contempt on October 10, 1991, which made the same allegation. On October 28, 1991, the trial court, *Bassick, J.*, found the defendant in contempt and ordered him to pay. In 1992, the plaintiff filed three more motions for contempt, on March 17, April 7, and April 23, respectively. On June 8, 1992, the trial court, *Axelrod, J.*, denied the motions. On May 12, 1993, the plaintiff filed her sixth motion for contempt, and the trial court, *Doherty, J.*, issued a contempt citation against the defendant on June 8, 1993. The defendant was ordered to pay $142.50 plus $50 per week for the arrearage. On the same day, the trial court, *Doherty, J.*, pursuant to the defendant's motion to modify, reduced the defendant's weekly payment to $75, plus $50 per week arrearage. The plaintiff filed the seventh motion for contempt on August 26, 1993, alleging that the defendant did not pay the $75 as required by the trial court's June 8, 1993 order. On August 30, 1993, the trial court, *Coppeto, J.*, ordered the defendant to continue his $75 per week payment, but raised the arrearage amount to $80 per week. On February 15, 1994, the plaintiff filed her eighth motion for contempt because the defendant had not complied with the August 30, 1993 order. The trial court, *Jones, J.*, referred the case to the office of family relations for investigation. This motion was finally resolved on September 22, 1994, when the trial court, *Pittman, J.*, found the defendant in contempt by and ordered him incarcerated. The defendant was purged of contempt by his payment of $1059 to the plaintiff on the same day. The matter was continued to October 26, 1994, when the trial court, *Pittman, J.*, ordered the defendant to pay $100 in child support per week plus $25 per week toward education expenses. The ninth motion for contempt filed by the plaintiff on September 8, 1995, is the subject of this appeal.

semester was $750. At the contempt hearing, the defendant argued that he should not have to split the cost of Timothy's living expenses with the plaintiff because Timothy was living at home instead of on the Quinnipiac campus. The trial court found that the expenses of living at home were not "room and board" within the spirit and intent of the parties' stipulation and, therefore, that the defendant should not be required to pay. Because we conclude that the intent of the parties is clear in the stipulation, intent is a matter of law, rather than a question of fact. See *Zadravecz* v. *Zadravecz*, 39 Conn. App. 28, 31, 664 A.2d 303 (1995). It was unnecessary for the trial court to look beyond the agreement to ascertain the intent of the parties. Furthermore, there was no evidence to indicate the intent and spirit of the stipulation.

An agreement between divorced parties regarding the postmajority education of their children that is incorporated into a dissolution decree should be regarded as a contract. *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990). "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citations omitted; internal quotation marks omitted.) Id., 110; see also *Sanitary Services Corp.* v. *Greenfield Village Assn., Inc.*, 36 Conn. App. 395, 399, 651 A.2d 269 (1994).

The stipulation of the parties made clear their intention to pay for the room and board of their children when they attended college. These items have a dollar value, whether incurred on or off campus, and each party agreed to pay one half of that value. Nowhere in the agreement is there a specification that requires the child to live on campus for the parents to be responsible for room and board expenses. The defendant could have incorporated such a specification into the stipulation had he wanted, but he did not. If the son had lived on campus, the evidence indicated that the father's share of room and board would greatly exceed $750.

Since the contract of the parties was unambiguous, we find that it was improper for the court to find as a fact that "the spirit and the intent of the agreement" did not require the defendant to pay one half of the cost of room and board while the son lived at home and attended college.

The judgment is reversed and the case is remanded with direction to order the defendant to pay one half of the cost of room and board in accordance with the judgment of May 21, 1990.