SUSAN ISSLER *v.* JAMES ISSLER
(AC 16463)

Foti, Landau and Daly, Js.

Argued December 8, 1997—officially released August 25, 1998

*Steven D. Ecker*, with whom, on the brief, were *Howard A. Jacobs, Shirley V. Hoogstra* and *Alinor C. Sterling*, for the appellant (defendant).

*Kathleen A. Hogan*, with whom, on the brief, was *Arnold H. Rutkin*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, James Issler, appeals from the trial court's judgment of contempt for failure to comply with the terms of a marriage dissolution agreement and from the court's award of attorney's fees

to the plaintiff, Susan Issler, for the appeal. As to the judgment of contempt, the defendant claims that the trial court improperly (1) construed the dissolution agreement to require calculation of alimony based on his total income rather than on only income received as salary, (2) found that the defendant's actions were in wilful contempt of the dissolution agreement, (3) arrived at its conclusions using a preponderance of the evidence standard and (4) awarded $10,000 in attorney's fees to the plaintiff. As to the $12,000 award of attorney's fees for the appeal, the defendant claims that the award was improper because the trial court (1) failed to consider factors mandated by General Statutes § 46b-62, (2) applied an improper legal standard and (3) abused its discretion. We affirm the judgment of the trial court.

The trial court dissolved the marriage of the parties in July, 1995. Subsequently, a dispute arose as to whether the defendant was to make alimony payments to the plaintiff based on income that he earned in his business as salary as opposed to additional income he received from yearly profits as the president of his company (profit income). The plaintiff filed a motion for contempt alleging alimony arrearage based on the profit income and for attorney's fees, which was granted by the trial court. The trial court determined that the defendant owed the plaintiff an alimony arrearage of $90,000 based on the profit income and that he owed her $10,000 in attorney's fees.[1] This appeal followed.

Following the trial court's granting of the plaintiff's motion for attorney's fees for the appeal, the defendant amended his appeal to challenge that award.

I

The defendant first challenges the trial court's judgment of contempt. The following additional facts are

---

[1] As a result of this decision, the plaintiff receives $10,000 alimony per month in addition to her undisputed monthly alimony payment of $28,166.67.

necessary to our resolution of this claim. The dissolution agreement provided, in relevant part, the following alimony schedule:

"a. The husband shall pay to the wife alimony in an amount equal to 33 1/3% of his gross earnings up to $750,000.00 gross in any calendar year in which he has an obligation to pay alimony.

"b. The next $100,000.00 of gross earnings of the husband's shall not be subject to increase his alimony.

"c. The husband shall pay to the wife as additional alimony 22% of the husband's gross earnings between $850,001 and $1,250,000.

"d. The husband shall pay to the wife as additional alimony 15% of the husband's gross earnings between $1,250,001.00 and $1,500,000.00.

"e. The husband shall pay to the wife as additional alimony 15% of the husband's gross earnings above $1,500,000.00.

"Gross earnings shall be defined as all income earned by the husband, wherever he may be employed and/or self-employed, after usual and customary business expenses and deductions if self-employed, in the form of salary, incentive payments, bonus, deferred compensation, present value of stock options, stock dividends, issued as compensation, or any other form of compensation direct or deferred including severance pay upon termination. . . .

"2.5 While the husband is employed by H.H. Brown Shoe Company, the Husband's gross earnings will be determined by H.H. Brown's independent certified public accountant's letter, which computes the compensation of James Issler.

"The Husband's present compensation agreement is annexed hereto as Exhibit A. In the event that his compensation agreement changes, he shall within thirty (30) days provide said new agreement(s) to the Wife.

"The alimony shall be based only on the Husband's gross earnings from H.H. Brown or his gross earnings wherever employed or self/employed reduced by customary business expenses and deductions and shall not include any passive income, unless the Husband is unemployed or earning less than $600,000.00 per year."

Exhibit A provided, inter alia, that "[James Issler's] compensation, effective January 1, 1995, will consist of an annual salary of $350,000.00, paid weekly, plus an incentive plan based on 5% of the combined annual adjusted consolidated profits, before income taxes, of the H.H. Brown Shoe Group."

"Although . . . plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." (Internal quotation marks omitted.) *Wilson* v. *Wilson*, 38 Conn. App. 263, 272, 661 A.2d 621 (1995). Appellate review of a finding of civil contempt "is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because . . . the findings

on which it was based were ambiguous and irreconcilable . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order."[2] (Internal quotation marks omitted.) Id., 271.

## A

The defendant claims that the trial court misconstrued the dissolution agreement to require calculation of alimony based on both salary and profit income rather than on salary alone. We disagree.

The trial court found the language of the dissolution agreement to be clear and unambiguous, stating, "The definition of gross earnings does not lack clarity or lend itself to more than one interpretation. The gross earnings for the year include the incentive payments for that year." Given the plain language of the dissolution agreement, we conclude that gross earnings were clearly defined to include profits received by the defendant through his compensation package. "Where the language of the [dissolution agreement] is clear and unambiguous, the [agreement] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *Legg* v. *Legg*, 44 Conn. App. 303, 306, 688 A.2d 1354 (1997).[3] The trial court properly construed the

---

[2] The defendant has not challenged the jurisdiction of the court to impose the punishment inflicted. Our review, therefore, is limited to whether the defendant's actions could constitute a contempt.

[3] It is well established that alimony agreements are construed as a contract between the parties. *Legg* v. *Legg*, supra, 44 Conn. App. 306. "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) Id.

term gross earnings as defined in the parties' voluntary dissolution agreement.

B

The defendant claims that the trial court improperly found him in "wilful contempt of court for failure to pay the alimony as ordered by the judgment." He correctly asserts that a finding of noncompliance, alone, will not support a judgment of contempt. See, e.g., *Eldridge* v. *Eldridge*, 244 Conn. 523, 529, 710 A.2d 757 (1998). He claims that his interpretation of the alimony agreement was reasonable, and that the trial court's order was not clear and unequivocal. As a result, he argues that the court was not justified in finding him in wilful contempt. We are unpersuaded.

In support of this argument, the defendant asserts that the definition of adjusted gross income was ambiguous and, therefore, could not support a finding of wilful contempt. He argues that the facts in this case are sufficiently similar to *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982), and *Baldwin* v. *Miles*, 58 Conn. 496, 501–502, 20 A. 618 (1890). We disagree.

The defendant fails to recognize facts that distinguish the present case from *Baldwin* and *Blaydes*. In *Baldwin* v. *Miles*, supra, 58 Conn. 500–502, the defendants were subject to an injunction that stated that they could not operate a phosphate manure business between July 1 and September 15, nor could they operate said business so as to produce noxious and offensive odors when the wind was blowing from east to west. The defendants operated a nonphosphate manure business during that period, which produced noxious and offensive odors, and they were subsequently found in contempt for violating the court order. On appeal, our Supreme Court held that the court order applied to the phosphate business only and, therefore, while the defendants' business may have produced noxious and offensive odors while

the wind was blowing east to west, they did not violate the injunction. In the alternative, the court held that if the order did not apply only to the phosphate business, it was vague and indefinite and could not support a judgment of contempt. The court reasoned that an order "should be clear and certain . . . so that the party upon whom it is served may readily know what he can or cannot do thereunder . . . ." Id., 502.

In *Blaydes* v. *Blaydes*, supra, 187 Conn. 464, the defendant was found in contempt for failure to comply with an alimony order. The alimony order provided that the term "adjusted gross income" would have the same meaning as it had for federal income tax purposes. The applicable federal tax provisions, however, were modified one year following the judgment of the court. The premodification provision defined the term "adjusted gross income" as a taxpayer's income prior to deducting alimony payments while the revised provision defined the term as income *after* deducting alimony payments. When the defendant used the revised provision to calculate his alimony payments, the plaintiff filed a motion for contempt, arguing that the defendant should have used the original provision instead of the revised provision. The trial court agreed and found the defendant in contempt. On appeal, our Supreme Court declined to enlarge the order beyond its express terms. The order did not restrict the definition of "adjusted gross income" to tax provisions for a specific year and, therefore, the defendant complied with the order by applying the revised definition of "adjusted gross income." Id., 468–69.

In the present case, the defendant was not found in contempt for actions outside the scope of the court order, the definition of gross earnings was not subject to change and the order was clear and certain. While an equivocal court order will not support a finding of contempt, that is not the case here. We first note that

this is the second contempt hearing in which the defendant has claimed a misunderstanding of the court order. At the first hearing, the trial court found that the defendant violated the court order, but did not make a finding of contempt. The definition of gross earnings is not subject to multiple interpretations, as the defendant suggests. We agree with the reasoning of the trial court that there is "no ambiguity in the language of the agreement which could have resulted in an innocent mistake based upon misinterpretation of the judgment by the defendant." It is clear that the act or acts for which the penalty was imposed justified a finding of wilful contempt.

## C

The defendant claims that the trial court used an inappropriate standard of proof when it found him in contempt by a preponderance of the evidence instead of by clear and convincing evidence.

As a threshold issue, we must first examine, under the circumstances of this case, whether this court can review the defendant's claim that an improper standard of proof was used by the trial court in deciding whether to hold him in contempt. This issue arises because this court's ability to review a finding of contempt is limited. See, e.g., *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 731–32, 444 A.2d 196 (1982). There exists, however, a "mechanism for the eventual review of errors which *allegedly* infringe on [a contemnor's fundamental] rights." (Emphasis added.) *Eldridge* v. *Eldridge*, supra, 244 Conn. 528. Our Supreme Court has found a civil contempt to be improper because the "contemnor's constitutional rights were not properly safeguarded . . . ." (Internal quotation marks omitted.) Id. As a result, this court has the power to review *alleged* constitutional error.

The next issue turns on whether the defendant *has alleged* constitutional error. The defendant briefed the

issue of whether the trial court improperly employed the preponderance of the evidence standard of proof, rather than the clear and convincing standard of proof. As a result, that general issue is before this court. As presented, however, the issue raised does not allege constitutional error, which is required for this court to be able to review the issue due to this court's limited review of contempt findings.

Therefore, the question becomes whether this court can, sua sponte, decide the standard of proof issue on grounds not claimed by the parties, i.e., due process. If this court can decide the issue on due process grounds even though not claimed by the parties, then the question becomes whether a constitutional fundamental right has been violated. The effect is that the defendant's otherwise unreviewable "generic" claim of impropriety would be transformed into a reviewable constitutional claim.

"In the interest of expediting decision, or for other good cause shown, the court in which the appeal is pending may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its own motion and may order proceedings in accordance with its direction." Practice Book § 60-3. In addition, this court "may in the interests of justice notice plain error not brought to the attention of the trial court . . . ." Practice Book § 60-5. Our Supreme Court has liberally interpreted the rules of practice in certain cases by holding that neither it nor this court is "limited in [our] disposition of a case to claims raised by the parties and [we have] frequently acted sua sponte upon grounds of which the parties were not previously apprised." (Internal quotation marks omitted.) *State* v. *Gilnite*, 202 Conn. 369, 373, 521 A.2d 547 (1987) (within discretion of Appellate Court to address, sua sponte, defendant's waiver of right to appeal by pleading nolo contendere, even though neither party briefed nor argued that issue).

In *State* v. *Smith*, 207 Conn. 152, 162, 540 A.2d 679 (1988), our Supreme Court exercised its "inherent supervisory authority over the administration of justice to review the defendant's claim," even though the defendant normally would have waived his right to appeal by having accepted the benefit of his plea bargain. The defendant had served his term of probation, and the issue became whether the appeal was moot. The *Smith* court asserted that the defendant's "position throughout has been that the special condition [of probation] had been illegally imposed and that any criminal consequences that flowed from it had continued to violate his rights. Implicit in this position is the contention that the revocation of his probation involved the fruit of the poisonous tree doctrine . . . and that raises a fundamental constitutional question which we may review although it was not explicitly articulated below or on the briefs." (Citation omitted.) Id., 163. In *Smith*, both parties addressed the issue of mootness, but not on the grounds of the "fruit of the poisonous tree doctrine." Id. and n.11. The *Smith* court nevertheless utilized the doctrine as a ground for its decision to reach the merits of the defendant's claim by citing to *State* v. *Gilnite*, supra, 202 Conn. 373. After analyzing the merits of the defendant's claims, the *Smith* court concluded that the appeal was moot because none of the defendant's rights was violated as claimed.

In *Greenwood* v. *Greenwood*, 191 Conn. 309, 315, 464 A.2d 771 (1983), our Supreme Court conditionally dismissed the plaintiff's appeal even though the defendant did not file a motion to dismiss and did not even raise such an argument. The *Greenwood* court stated that it is not limited to claims raised by the parties in its disposition of a case and that it has "frequently acted sua sponte upon grounds of which the parties were not previously apprised." Id.

While it appears that we are vested with discretion as to whether to review the defendant's claim, we decline to review the claim because review of a contempt order is intended to occur only in limited circumstances, none of which apply here due to the defendant's failure to raise "due process" as a ground for review. While one could reason, as did our Supreme Court in *Smith*, that "implicit" in the defendant's claim that an improper standard of proof was applied by the trial court is a due process argument because the proper standard of proof is a concept embodied in the due process clause; see *Cooper* v. *Oklahoma*, 517 U.S. 348, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996); we decline to rule, sua sponte, on the issue. The question is one of great importance and carries grave consequences; to rule in such circumstances is inappropriate. We decline to exercise our discretion to review the defendant's claim.

D

The defendant finally claims, with respect to the judgment of contempt, that the trial court improperly awarded the plaintiff $10,000 in attorney's fees. The defendant argues that the award of attorney's fees "must be reversed with the reversal of the finding of contempt upon which it was based." The defendant cites to *Emerick* v. *Emerick*, 28 Conn. App. 794, 805, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992), for the proposition that reversal of financial orders, including attorney's fees, is required when this court reverses the trial court's finding of contempt. Because we affirm the trial court's finding of contempt, the defendant's argument must fail.

II

The defendant next claims that the trial court improperly awarded the plaintiff $12,000 in attorney's fees for

the appeal. He claims that the trial court failed to consider the statutory factors required in an award of attorney's fees as set forth in General Statutes § 46b-62. In addition, the defendant claims that the trial court applied an incorrect legal standard and, even under the proper standard, abused its discretion. We disagree.

Certain additional facts are necessary to our resolution of this claim. The plaintiff filed a motion for attorney's fees for the appeal. A hearing was held before the trial court,[4] at which time the plaintiff did not present any further evidence in support of the motion. At an adjourned hearing, the plaintiff's attorney submitted an affidavit of fees. The trial court awarded the plaintiff $12,000 in attorney's fees for the appeal.

Pursuant to General Statutes § 46b-62, the trial court "may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ." General Statutes § 46b-82 provides that "[i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

"Whether to allow counsel fees, and if so in what amount, calls for the exercise of judicial discretion. . . . *Holley* v. *Holley*, [194 Conn. 25, 33–34, 478 A.2d 1000 (1984)]. Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of a lack of funds. . . .

[4] The plaintiff filed a financial affidavit in reference to this hearing.

Where, because of other orders, both parties are financially able to pay their own counsel fees, they should be permitted to do so. . . . *Koizim* v. *Koizim*, 181 Conn. 492, 501, 435 A.2d 1030 (1980). If, however, the failure [to make an award] would substantially undermine the other financial awards, an award of attorney's fees is justified. *Eslami* v. *Eslami*, 218 Conn. 801, 820, 591 A.2d 411 (1991). An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did. *Cook* v. *Bieluch*, 32 Conn. App. 537, 544, 629 A.2d 1175, cert. denied, 228 Conn. 910, 635 A.2d 1229 (1993). In making an award of attorney's fees, [t]he court is not obligated to make express findings on each of these statutory criteria. *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982)." (Internal quotation marks omitted.) *Unkelbach* v. *McNary*, 244 Conn. 350, 373–74, 710 A.2d 717 (1998).

The defendant's claims that the trial court failed to consider the statutory criteria and that no evidence was presented to support the award of attorney's fees for the appeal are without merit. The trial court stated that it considered the statutory criteria and case law relevant to an award of attorney's fees. The court was aware of the financial circumstances of the parties from the underlying contempt action. Additional financial affidavits were filed by the parties, which provided a more current financial status for each of them. The court found that "if attorney's fees are not ordered on behalf of Mrs. Issler . . . it would disturb the mosaic that was formulated by the uncontested dissolution separation agreement of the parties."

"If . . . the trial court concludes, based on the total financial resources of the parties, that denying an award of counsel fees would undermine its prior financial orders, then it may award counsel fees to the requesting party." (Internal quotation marks omitted.) *Turgeon* v.

*Turgeon*, 190 Conn. 269, 281, 460 A.2d 1260 (1983). The trial court found that a denial of the plaintiff's attorney's fees would impair or undermine the other financial orders entered.[5] We conclude that the trial court did not abuse its discretion and properly awarded the plaintiff counsel fees for the appeal.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

DALY, J., dissenting. While I agree with the majority that we have discretion to review the defendant's challenge to the standard of proof applied to a judgment of contempt, I believe that the facts in this case warrant the exercise of our discretion. I would review this claim and, therefore, must respectfully dissent in part from the majority's resolution of the defendant's first claim.

In *Eldridge* v. *Eldridge*, 244 Conn. 523, 710 A.2d 757 (1998), our Supreme Court reaffirmed the standard of appellate review of a trial court's finding of civil contempt. "[O]ur review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . *This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights* and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the

---

[5] The defendant's claim that the trial court applied the wrong legal standard in awarding attorney's fees because the court did not use the exact phrase "substantially undermine" is without merit. See *Unkelbach* v. *McNary*, supra, 244 Conn. 377 (holding express finding that court's earlier financial orders would be undermined unnecessary).

injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . *the contemnor's constitutional rights were not properly safeguarded* . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order. . . . *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 731–32, 444 A.2d 196 (1982); see also *Dunham* v. *Dunham*, 217 Conn. 24, 29, 584 A.2d 445 (1991).

"Although . . . plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its *emphasis on fundamental rights* underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment. *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 666, 594 A.2d 958 (1991), quoting *Dunham* v. *Dunham*, supra, 217 Conn. 29–30; see *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 658–59, 646 A.2d 133 (1994)." (Emphasis added; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, supra, 244 Conn. 527–28.

In *Eldridge*, our Supreme Court stated that the limited standard of review "originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights . . . ." Id. Review has been granted when "the contemnor's constitutional rights were not properly safeguarded . . . ." Id., 528. When the claim involves a possible violation of a fundamental right, the balance between fundamental rights and the court's contempt power shifts in favor of the contemnor's fundamental rights. In an appeal from a finding of civil contempt, therefore, this court has jurisdiction to review constitutional error.

"Where no standard of proof is provided in a statute, due process requires that the court apply a standard which is appropriate to the issues involved." *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 296, 455 A.2d 1313 (1983). A challenge to the standard of proof applied by the trial court is implicitly a question of what proof is required either by the applicable statute or the due process clause.

This court has jurisdiction to consider the issue under the due process clause even though that ground was not distinctly raised by the parties. The defendant raised and the parties briefed the issue of whether the trial court applied an incorrect standard of proof; neither party relied, however, on the due process clause.

This court is not bound to dispose of a claim by the limited grounds that are raised by the parties. " '[Our Supreme Court] is not limited in its disposition of a case to claims raised by the parties and has frequently acted sua sponte upon grounds of which the parties were not previously apprised.' *Greenwood* v. *Greenwood*, 191 Conn. 309, 315, 464 A.2d 771 (1983). Likewise, the Appellate Court has similar discretion in addressing claims not raised by the parties. See Practice Book §§ 2000, 4187 [now § 60-3]." *State* v. *Gilnite*, 202 Conn. 369, 373, 521 A.2d 547 (1987); see also *State* v. *Smith*, 207 Conn. 152, 163, 540 A.2d 679 (1988).

Because the defendant's due process rights are implicated by the imposition of an incorrect standard of proof, I would exercise my discretion and address the defendant's challenge to the standard of proof in a finding of civil contempt under the due process clause.

The defendant claims that the trial court improperly found him in contempt by a preponderance of the evidence instead of by clear and convincing evidence. I agree with the defendant and would adopt the heightened standard of proof in civil contempt proceedings.

The issue of whether a finding of civil contempt must be supported by proof of clear and convincing evidence is one of first impression for this court. Therefore, we look to the federal courts and, more specifically, to the United States Court of Appeals for the Second Circuit for guidance. I find the reasoning of the federal courts to be persuasive.

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. *In re Winship*, 397 U.S. 358, 370 [90 S. Ct. 1068, 25 L. Ed. 2d 368] (1970) (Harlan, J., concurring)." (Internal quotation marks omitted.) *Addington* v. *Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

"A standard of proof allocates the risk of error between the litigants and indicates the relative importance of the ultimate decision. *Addington* v. *Texas*, [supra, 441 U.S. 423]. For example, the proof beyond a reasonable doubt standard implies that the party on whom that burden is imposed should bear almost the entire risk of error. Id. at 423–24, 99 S. Ct. at 1808. In contrast, the preponderance of the evidence standard indicates that the litigants should share equally the risk of error, id. at 423, 99 S. Ct. at 1808, because the interests at stake have roughly equal societal importance. *Santosky* v. *Kramer*, 455 U.S. 745, 787, 102 S. Ct. 1388, 1411–12, 71 L. Ed. 2d 599 (1982) (Rehnquist, J., dissenting). Proof by clear and convincing evidence is an intermediate standard generally used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing, or when particularly important individual rights are involved. *Addington*, 441 U.S. at 424, 99 S. Ct. at 1808. *United States* v. *Schell*, 692 F.2d 672, 676 (10th Cir. 1982) . . . ." (Internal quotation marks

omitted.) *Cookson* v. *Cookson*, 201 Conn. 229, 234, 514 A.2d 323 (1986).

In *Stringfellow* v. *Haines*, 309 F.2d 910, 912 (2d Cir. 1962), the Second Circuit Court of Appeals relied on the reasoning of Judge Hutcheson in *Coca-Cola Co.* v. *Feulner*, 7 F. Sup. 364, 365 (S.D. Tex. 1934), to hold that a finding of civil contempt must be proven by clear and convincing evidence. "[Civil contempt] is for the benefit of the complainant; the punishment meted out in it is remedial. *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 31 S. Ct. 492, 55 L. Ed. 797 [1911] . . . . A proceeding for criminal contempt, on the other hand, is to vindicate the authority of the court and the sentence is punitive. [Id.] In proceedings for criminal contempt, the defendant is presumed to be innocent and must be found guilty, and no contempt order will issue unless the defendant is proven guilty beyond a reasonable doubt. Id. In those for civil contempt, there is no presumption, and proof of the contempt need not be beyond a reasonable doubt. *Oriel* v. *Russell*, 278 U.S. 358, 49 S. Ct. 173, 73 L. Ed. 419 [1929]. While this is so, a bare preponderance of the evidence will not suffice to hold one even in civil contempt. Proof of violation must be clear and convincing." *Coca-Cola Co.* v. *Feulner*, supra, 365. That principle has been repeatedly affirmed by the Court of Appeal for the Second Circuit.[1]

In *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 496 A.2d 476 (1985), our Supreme Court stated that "we

---

[1] See *Equal Employment Opportunity Commission* v. *Local 638*, 81 F.3d 1162 (2d Cir.), cert. denied, 519 U.S. 945, 117 S. Ct. 333, 136 L. Ed. 2d 246 (1996); *King* v. *Allied Vision, Ltd.*, 65 F.3d 1051 (2d Cir. 1995); *Huber* v. *Marine Midland Bank*, 51 F.3d 5 (2d Cir. 1995); *Dunn* v. *New York State Dept. of Labor*, 47 F.3d 485 (2d Cir. 1995); *United States* v. *Local 1804-1, International Longshoremen's Assn., AFL-CIO*, 44 F.3d 1091 (2d Cir. 1995); *United States* v. *O'Rourke*, 943 F.2d 180 (2d Cir. 1991); *Equal Employment Opportunity Commission* v. *Local 580*, 925 F.2d 588 (2d Cir. 1991); *United States* v. *International Brotherhood of Teamsters*, 899 F.2d 143 (2d Cir. 1990); *United States* v. *Ayer*, 866 F.2d 571 (2d Cir. 1989).

are compelled to affirm the established principle of law that a finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases. *Potter* v. *Board of Selectmen*, [174 Conn. 195, 197, 384 A.2d 369 (1978)], quoting *Huntington* v. *McMahon*, [48 Conn. 174, 196 (1880)]. This rule must be given full effect especially when, as in this case, the defendants are subject to substantial fines and to a possible loss of liberty. We cannot uphold an adjudication of contempt in the total absence of evidence upon which such a finding could be based. *Commonwealth* v. *Kreplick*, 379 Mass. 494, 497, 399 N.E.2d 9 (1980)." (Internal quotation marks omitted.) *Cologne* v. *Westfarms Associates*, supra, 197 Conn. 155–56.

I believe that this reasoning applies not only to the type of evidence but also to the *quantity* of evidence. On the basis of the possibility of substantial fines and loss of liberty, I would conclude that a finding of civil contempt must be proven by clear and convincing evidence. I would reverse the judgment and remand the matter for further proceedings at which a clear and convincing standard of proof would apply.

