[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife filed a motion for contempt against the defendant husband on June 15, 1998 alleging that he had neglected CT Page 229 and refused to comply with a court order requiring him to pay certain college expenses for the two adult children of the marriage. The defendant has claimed in argument and his brief (but has not pleaded) that the plaintiff is barred under the doctrines of waiver, laches, and equitable estoppel.
The court heard the parties over several trial days, and received testimony from each of the two children. Some documentary evidence was admitted into evidence, and each party's counsel submitted written briefs. In addition, the plaintiff's counsel submitted proposed orders. The court observed the demeanor of the parties and evaluated the credibility of each witness.
The parties have two children issue of this marriage. Shannon, who was born on December 6, 1974, was nineteen when judgment entered on July 12, 1993 and is twenty-three now. Michael, Jr, born September 12, 1977, was sixteen at the time of judgment and is twenty-one now.
The judgment provides that the defendant must contribute to the children's post-high school education as follows:
 The husband shall be responsible for payment of college tuition and books for Shannon and Michael, Jr. at a cost equivalent to the University of Connecticut at Storrs.
 The husband and wife shall divide equally the cost of college room and board for Shannon and Michael, Jr. at an expense not to exceed the cost of the University of Connecticut at Storrs.
 The husband shall provide Shannon with transportation, or reimbursement for the cost thereof, while she is an undergraduate college student.
 The husband and wife shall divide equally the cost of automobile insurance for both Shannon and Michael Jr. while they are undergraduate college students.
These provisions were drafted by the plaintiff's lawyer and signed by the defendant. The court finds that the plaintiff gave up any claim for alimony for herself at the time of the dissolution in reliance of the defendant's agreement to provide substantial financial assistance to the parties' children while CT Page 230 they were undergraduate students. The award to the defendant of the dependency exemption for the children for federal income tax purposes was an additional incentive for him to make this agreement.
On September 8, 1995, the plaintiff filed a motion for contempt alleging that the defendant had failed to pay child support of $150.00 per week due for Michael's support, and failed to pay for Shannon's transportation. By agreement of the parties, the defendant was found to be in arrears in the sum of $6,700.00 at the hearing of the motion, but the judgment on that contempt motion did not indicate how much of that sum was attributable to Michael's support and how much to Shannon's transportation. This court will not address any claim for transportation for Shannon arising prior to September 19, 1995, that issue having previously been litigated and resolved.
The court has jurisdiction to enforce through contempt proceedings a written post-majority support provision incorporated into a divorce judgment. Connecticut General Statutes, Section 46b-66.
Although he has paid for a substantial portion of the tuition for both children, it is undisputed that the defendant has not paid for virtually any of the expenses incurred by the children for room and board, transportation, and automobile insurance as claimed by the plaintiff. For some unpaid expenses, he offered no explanation for his failure to pay, while for others he contended that he was not liable for them because they were not all incurred while the children were in school and because he was never asked for payment. In addition, he claims that he should not be required to pay for Michael's room and board or automobile insurance while Michael was a part-time student. With respect to these amounts, the court finds the following facts.
Shannon's college career was relatively conventional. During the marriage, she spent her freshman year at Central Connecticut State University ("CCSU") and lived at home in West Hartford. This period is not covered by the judgment but indicates an expectation of the parties that the children might live at home while they were in college. During her second year, fall 1993 and spring 1994, she attended the same school. The defendant paid for tuition and books but did not contribute to room and board at an off-campus apartment which cost $300.00 per month for the nine month school year, and did not contribute to transportation CT Page 231 expenses.
In the fall of 1994, Shannon attempted to transfer to the University of Arizona. Mr. Sablosky contributed no funds for tuition, room and board, books, or transportation. Mrs. Sablosky attempted to borrow funds for this educational experience, but when the loan application was unsuccessful Shannon was required to drop out and return home, delaying her projected graduation by one semester.
In the spring of 1995 and the fall of 1995, Shannon resumed her studies at CCSU. Mr. Sablosky paid tuition, but did not contribute for fees, room and board, or transportation. In the spring of 1996, he contributed nothing, and in the fall of 1996 supplied her with only $800.00 for part-time tuition. Throughout the last two years, she lived primarily at home with her mother.
The court finds that Shannon's failure to complete her four-year college course by the end of the 1996 spring semester is attributable to the defendant's failure to contribute to the fall semester of 1994 or to contribute to full time tuition for the spring of 1996. He offers no explanation for his failure to contribute to Shannon's expenses at the University of Arizona other than his unilateral declaration at the time that he could not afford to pay for both children. Having substantially caused the delay in Shannon's educational progress, the defendant unilaterally and in violation of the court order refused to contribute to her college expenses after she turned twenty-one on December 6, 1995. His refusal to contribute after that date would have been a violation of the court order even if he had not caused her delayed completion, since under the best circumstances she could not have completed her degree before the spring of 1996. His lack of contribution as indicated herein interfered with the advantages and opportunities she had for her college experience: she was required to work extraordinary hours during her last two years of school, and was not able to participate fully in campus life.
Michael's college experience has been less conventional. With the support of both of his parents, he enrolled in the fall of 1995 for his freshman year at a small college in Pennsylvania, but returned home after a few weeks. The following spring, he was unable to gain full-time admission to CCSU, but took part-time courses there while living at home. The defendant paid the tuition and book fees for his part-time attendance there for the CT Page 232 spring and fall of 1996 and the spring of 1997, but did not contribute to Michael's living expenses or car insurance. The defendant also paid full-time tuition and fees for Michael for the spring and fall of 1998, but again did not pay for room and board, books, or automobile insurance. Mr. Sablosky paid nothing toward winter session courses in 1997 nor toward summer session courses during 1998. Had Michael gone straight through college, his anticipated graduation date would have been the spring of 1999. He has had to work during his schooling, a fact partly attributable to his father's failure to pay in accordance with the court order. However, the defendant cannot bear the entire responsibility for Michael's lack of progress in college. Michael's grades have not been good, and he has failed a number of courses. While this might be partly attributable to the financial circumstances in which his father has placed him, there is insufficient evidence to permit a conclusion that is the only cause for the failures.
The plaintiff claims that she is entitled to reimbursement for the room and board expenses of the children supplied by her while they were living at home and attending school. She seeks a formula which attributes one third of her expenses for running the household annually to each child's room and board, based on weekly expenses of $542.00, which the court finds is reasonable but must be adjusted to account for the fact that the parties were to split room and board equally. The result would be a sum less than the room and board at the University of Connecticut at Storrs which is the cap of the defendant's required contribution. Her suggested formula does not take into account that the school year is only nine months.[1] The defendant claims that he should not have to pay room and board, transportation, or insurance rates for periods when either of the children are part-time students. The language of the judgment does not support that conclusion, although the court finds that the defendant should not have to pay full room and board for Michael during the spring of 1995, when part-time attendance was attributable to a situation created solely by Michael. The defendant also claims that he should not have to pay the sums because the children never asked for them. Since he was the obligor, it was the defendant's responsibility to ascertain the amounts he was required to pay, without placing the children in the position of having to solicit the funds. This finding is reinforced by the fact that the defendant was not responsive to requests by Shannon for funds when she did ask for them. CT Page 233
The court finds from an examination of the defendant's tax returns for 1995, 1996, and 1997 that he had the ability based upon his income alone to make the payments required under the judgment. He owns a corporation engaged in trucking. In 1995, he showed gross receipts of $63,604.00 and a salary of $28,750.00. However, his return also indicated a depreciation deduction from gross sales of $8,728.00, which was an amount not actually expended by him, and retained earnings in the corporation of $9,179.00. In 1996, his gross receipts were $108,312.00 and his stated salary was $32,500.00. However, he showed a depreciation deduction of $16,928.00 that year and retained earnings of $5,777.00. In 1997, his gross receipts were $106,750.00 and his reported salary was $30,500.00, but his depreciation deduction was $16,861.00.
The Plaintiff incurred $3,000.00 in attorney fees to prosecute this motion prior to the second day of trial, additional attorney fees to be determined later for the complete trial, and sheriff's fees.
A written agreement between parties to a dissolution action providing for post-majority educational support for their children, when that agreement is incorporated into the judgment, should be regarded as a contract. Barnard v. Barnard,214 Conn. 99, 109 (1990). When that agreement evidences a clear intention that the parties pay for room and board while children are attending college, the duty to do so exists whether the children live on campus or at home. Legg v. Legg, 44 Conn. App. 303, 305
(1997). While the defendant correctly points out that the language of the contract must be construed against the drafter, there is no need for construction of the language, which is unambiguous except as to its definition of "undergraduate college student." This court interprets that phrase to mean a student attending a post secondary school institution for four years, but finds that if, as here, the obligor interfered with a child's ability to complete the course of study in four years then the time in which completion of the course of study was expected may be extended. When construing a contract, the court must give paramount effect to "the intent of the parties, as determined from the language of the document, the surrounding circumstances, the motives of the parties, and the purposes sought to be achieved . . ." In Re Putnam Properties Ltd. Partnership, 13 B.R. 477
(1991), citing Barnard v. Barnard, 214 Conn. 99 (1990). Using all of these factors, it is clear that these parties intended that the defendant would pay college tuition, one half of living CT Page 234 expenses, car insurance, and Shannon's transportation so long as each was enrolled in school. However, the court finds that the intention of the parties did not extend to enrollment beyond eight semesters, whether those were full-time or part-time semesters.
The court finds that the defendant has not sustained his burden to prove waiver, laches, or estoppel.
Based upon these findings and conclusions, the court finds that the defendant is in contempt of court for his willful failure to comply with the orders contained in the judgment of July 12, 1993, and he is ordered to make payment to the plaintiff of the following amounts:
Attorney fees and costs:
 $3,000.00, plus an amount to be determined by the court for the subsequent days of trial, over which the court retains jurisdiction, plus sheriff's fees of $29.78.
Arrearages:
 Room and Board for Shannon $ 9,691.79 (1/2 of 1/3 of $542.00 per week for 38.7 weeks for two years = $6,991.79) ($300.00 per month for Fall 1993 and Spring 1994 = $2,700.00)
 Room and Board for Michael $ 6,991.79 (1/2 of 1/3 of $542.00 per week for 38.7 weeks for two years = $6,991.79)
 Car Insurance for Shannon $ 3,200.00 (1/2 of $1,600.00 x 4 years= $3,200.00)
 Car Insurance for Michael $ 2,400.00 (1/2 of $2,400.00 x 2 years = $2,400.00)
Transportation for Shannon $10,000.00
Tuition for Shannon $10,500.00
Tuition for Michael $ 1,280.00 CT Page 235
 TOTAL $44,063.58, plus attorney fees and costs
The court finds that Shannon is entitled to benefits under the judgment for one additional semester, and that Michael is entitled to benefits under the judgment for four additional semesters, whether those involve full-time or part-time attendance. The judgment of dissolution of the marriage shall otherwise be unaffected by this order.
Orders shall enter accordingly.
BY THE COURT,
GRUENDEL, J.