[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED* MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR CONTEMPT OR ORDER POST-JUDGMENT DATED NOVEMBER 8, 1999
The defendant has moved for an order of the court requiring the plaintiff to pay for tuition, room and board, and college-related expenses for two of the parties' three children, to reimburse her for his share of health insurance premiums paid for the benefit of their minor child, to provide proof of life insurance, and to pay her expenses in connection with this motion. For the reasons stated below, the court enters the following orders.
Tuition and other college expenses
The judgment of dissolution between the parties dated September 10, 1991, required the defendant to pay post-majority tuition for the children who are issue of the marriage: James, who was born September 13, 1978 and is now 21 years of age; Michael, who was born December 6, 1979, and is now 20 years of age; and Benjamin, who was born on December 31, 1981, and is now 18 years of age. At issue here are college costs for the oldest and youngest children, James and Michael. Article 10 of the Separation Agreement made August 10, 1991, and incorporated into the judgment provides that
 HUSBAND agrees to pay the tuition of any private schools or undergraduate colleges the parties' children choose to attend. HUSBAND shall be consulted prior to the decision of such school CT Page 888 or college. . . . The children must apply for any scholarships or financial aid [f]or which they may qualify and the WIFE shall cooperate in obtaining said scholarships.
 The HUSBAND also agrees to pay fully the room and board of any private schools or undergraduate colleges the parties' children choose to attend so long as WIFE's income is below the "Index", as set forth [in the agreement].
 The parties shall share equally all other related expenses pertaining to the children's private school or undergraduate college education over and above tuition and room and board.
The plaintiff has agreed to pay for the tuition for his younger son, Ben, who will begin attending Louisiana State University at Alexandria this spring. At issue between the parties is the plaintiffs refusal to pay for (a) tuition for the older son, James. and (b) expenses of room and board for either son, and (c) his share of other expenses the defendant claims are college-related expenses.
The evidence established that plaintiff paid for undergraduate tuition for James to attend Northwestern Connecticut Community-Technical College (NCCC) three years ago when James was 18. The plaintiff also bought a computer and car for James' use while in college then. The evidence also established that James dropped out of school almost immediately and did not even complete one semester. The plaintiff then provided employment for his son for the following three years, until James quit that job without explanation to the plaintiff six weeks before the hearing on these matters. James is presently homeless and unemployed. James also dropped out of military school that his father had paid for when he was age 13.
The plaintiff testified, and the court finds this testimony persuasive, that if James does not have to contribute to the cost of his education, he will probably again not follow through and complete his education. James himself testified that he wants to attend college again, but could not finance college on his own unless he attended only part-time or during evenings so that he can get a job to pay for his education expenses. Despite this, however, James testified that he wanted to pay for his tuition himself and did not want his father to be ordered by the court to pay tuition. James also stated that he thought he would complete his education if he had to pay for it himself and thought he CT Page 889 might respect himself more if he had to pay for it himself. From this evidence, the court finds persuasive the plaintiffs testimony that it is James' best interests if the plaintiff does not pay for tuition for James.
In this context, where the court has found it not to be in James' best interest for the plaintiff to pay for James' tuition, the court must now rule on the defendant's request that plaintiff be ordered to do so. Her argument is that the separation agreement is a written contract whose plain language requires plaintiff to do so, and that the court thus has no discretion but to so order.
In interpreting the language of the separation agreement, the court must apply a rule of reasonableness so as to give effect to the intent of the contracting parties.
 When a judgment incorporates a separation agreement in accordance with a stipulation of the parties, it is to be regarded and construed as a contract. Construction of such an agreement is an issue of fact to be resolved by the trial court as the trier of fact. . . . In giving meaning to the terms of a contract, the court should construe the agreement as a whole, and its relevant provisions are to be considered together. The contract must be construed to give effect to the intent of the contracting parties. This intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained. [I]ntent . . . is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. When the language is clear and unambiguous, however, the contract is to be given effect according to its terms. In such a case, no room exists for construction.
(Internal quotations and citations omitted) Greenburg v.Greenburg, 26 Conn. App. 591, 595-597, 602 A.2d 1056 (1992). In determining the intent of the parties, "a court cannot by that means disregard the words used by the parties or revise, add to, or create a new agreement." Klein v. Klein, 3 Conn. App. 421,422-423, 488 A.2d 1288 (1985). The defendant has asserted that the separation agreement imposes a life-time requirement on the plaintiff to pay for tuition, room and board, and other college-related expenses. The court finds that to be an CT Page 890 unreasonable interpretation of the language of the separation agreement. Since the judgment does not specify the time period during which the plaintiff would be obligated to pay for tuition, room and board and other college expenses, the court will apply the general contract principle that where no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time. Benassi v. Harris. 147 Conn. 451, 458,162 A.2d 521 (1960); see 3A Corbin, Contracts § 716, p. 366. While the language of the agreement imposes no time limits on plaintiffs obligation to pay for tuition, this court believes the plaintiff fulfilled the reasonable and foreseeable obligations imposed on him by the separation agreement and intended by the parties in this regard when he paid for tuition and college expenses for James when he last attended NCCC.
In considering this matter, moreover, the Superior Court sits as a court of equity. Bratz v. Bratz, 4 Conn. App. 504, 507,495 A.2d 292 (1985); Warner v. Konover, 210 Conn. 150, 1155-156,553 A.2d 1138 (1989); Pasquariello v. Pasquariello, 168 Conn. 579,585, 362 A.2d 835 (1975). Based on the court's finding of James' best interest, the court holds it would be inequitable to require the father to pay for tuition that would not benefit his son. Nor does the court believe that either party would have contemplated or intended the separation agreement to require the plaintiff to pay for James' tuition and other college expenses if it best for James that he pay for these expenses himself.
Furthermore, the evidence does not establish that the defendant has complied with one of the prerequisites for plaintiff to be required to pay any tuition and other college expenses — that she consult with the plaintiff about the decision to attend college. The evidence established' that in September 1999 she telephoned plaintiff and told him their older son would probably re-enter college soon. She then sent him a letter in October tell plaintiff that James would attend college in the spring 2000 semester and that she expected plaintiff to pay for the tuition; such a unilateral announcement of the son's intention to attend college hardly qualifies as consultation.[1] Furthermore, the court rules that plaintiff has no obligation under the separation agreement to pay for room and board or college-related expenses for James, for the reason stated in this and the previous paragraph.
Accordingly, the court denies the defendant's motion that CT Page 891 plaintiff be ordered to pay for tuition or other expenses for James to re-enter school. Although not entering such an order, the court does believe that it would be in James' best interest for plaintiff, defendant, and James to all begin consulting regularly and cooperating with each other regarding James re-entering college. Perhaps there is a voluntary financial role for plaintiff to pay, if future events make it in James' best interest for plaintiff to help James with part of the cost of his attending college.
As for room and board expenses, the evidence establishes that Ben will live at home with his mother when he attends LSUA. If James re-enters college, he would prefer to live on his own, he said. The language of the separation agreement only covers "room and board of the college," and the court reads this language to mean such expenses imposed by the college itself for living at the college and does not cover living expenses at home or on one's own. This case is thus unlike Legg v. Legg,44 Conn. App. 303, 688 A.2d 1354 (1997). In Legg, the court held that a separation agreement requiring each parent to pay "one-half of . . . room and board," covered the cost of room and board while living either at school or at home. The separation agreement in the present case does not require plaintiff to pay for room and board only when the children live on campus (a provision that the court in Legg suggested would remove any responsibility to pay for room and board at home. Id. at 307.) The separation agreement here does say, however, "room and board of any private schools or undergraduate colleges" (emphasis added). That language unambiguously expresses the clear intent that the room and board expenses would cover expenses imposed by a private school or undergraduate college, as imposed to expenses living at home. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." Id at 306.
The provision in the separation agreement that plaintiff and defendant share the cost of other college-related expenses does not cover living expenses either, since living expenses are not directly "college-related" and the agreement only requires the plaintiff to share the cost of expenses other than tuition and room and board. The court therefore denies the defendant's motion to order payment by plaintiff for living expenses while either CT Page 892 child attends college. The other college expenses that, the court orders plaintiff must share equally with defendant for Ben's college education are for books, lab or other fees imposed by the college as a consequence of being enrolled there or taking particular courses, or other fees ordinarily imposed on all students at the institution.
Health insurance premiums
Article 11 of the separation agreement, pertaining to medical insurance, provides that the plaintiff would maintain health insurance for the minor children until they reached the age of majority or the defendant obtained equivalent medical insurance through her employment. If the defendant's medical insurance covered the children, plaintiff was to share equally in any costs of that insurance with the defendant. Here, the defendant quit her job in Connecticut to move to Louisiana for a better job. Without health insurance available from her new employer, she maintained her old insurance under the group health plan's benefits continuation COBRA coverage at a cost to her each month for medical coverage for Ben for the period September 1999 through December 1999 (when he reaches the age of majority) of $217.66. In accordance with the earlier decision of the court,Sheldon, J., adopting a written stipulation of the parties on March 9, 1998, the plaintiff shall pay for the entire cost of the medical insurance for the minor child Benjamin until he reached the age of majority at the end of 1999. Consequently, plaintiff shall pay the entire cost of the $870.64 premium to the defendant.
Proof of life insurance
The separation agreement requires plaintiff to maintain a life insurance policy with the three "children as beneficiaries with Rachael Lamb as the trustee of said funds until the youngest child attains the age of 18 years old or finishes college, whichever should occur later." The evidence established that plaintiff had not completely complied with these terms. Although he maintains a policy naming Rachael Lamb as beneficiary, he has neglected to make her a trustee for the three children as the beneficiaries as required by the separation agreement. Plaintiff claimed this was a mistake and agreed to correct it, and the court orders him to do so as soon as possible, but in no event shall he delay more than one week after issuance of this decision before initiating whatever steps are necessary to make the CT Page 893 necessary correction and he shall then pursue and complete that correction promptly and without any delay attributable to him.
Costs of pursuing this claim
The defendant has requested the court to order that plaintiff pay for her travel to Connecticut and back to Louisiana and while here to prosecute these claims (air fare of $425; $290 car rental while here; $300 car rental for return to Louisiana), lodging while here ($95 for motel rental), lost wages of $598, counsel fees (a $1,500 retainer plus other expenses she may incur), and other miscellaneous expenses ($103 for lifeguard training that is unexplained and not understood by the court and $200 unspecific miscellaneous expenses) in regard with her pursuing these claims. Because she has decided to drive back to Louisiana with her son James, who is relocating there, she is asking the court to pay both for her car rental back to Louisiana and for a round trip plane fare that has an unused return seat. After considering these requests and the factors set forth in general statutes § 46b-82, the court does not believe that an award of counsel or other fees is appropriate or necessary here.
SO ORDERED.
BY THE COURT
Stephen F. Frazzini, Judge of the Superior Court
January 19, 2000